**MEMORIAL DRIVE CONSULTANTS, INC., Plaintiff–Appellee–Cross–Appellant,**

v.

**ONY, INC., Defendant–Appellant–Cross–Appellee.**

Docket Nos. 01–7353, 01–7387.

United States Court of Appeals, Second Circuit.

Feb. 14, 2002.

57

Mitchell J. Banas, Jr., Jaeckle, Fleischmann & Mugel, LLP, Buffalo, NY, for Defendant–Appellant.

Benjamin M. Zuffranieri, Jr., Philip Y. Brown, and Joseph H. REINHARDT, Hodgson Russ LLP, Buffalo, NY, for Plaintiff–Appellee.

Present JACOBS, F.I. PARKER, and SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Western District of New York (John T. Elfvin, *S.D.J.*), it is hereby

ORDERED, ADJUDGED AND DE-CREED that the judgment of the district court is AFFIRMED.

Defendant-appellant ONY, Inc. ("ONY"), appeals from an order of the district court, dated May 28, 1999, granting partial summary judgment to plaintiff-appellee Memorial Drive Consultants, Inc. ("MDCI"), on MDCI's contract claim and denying ONY's summary-judgment motion to dismiss MDCI's *quantum meruit* claim. MDCI cross-appeals from the district court's grant of summary judgment to ONY declaring unenforceable certain provisions of the contract and dismissing MDCI's claim for deceptive business practices. MDCI further appeals from the district court's post-trial order of March 7, 2001, denying MDCI's motion for judgment notwithstanding the verdict or for a new trial and calculating pre-judgment interest on MDCI's contract damages award. ONY cross-appeals from the same calculation of pre-judgment interest. ONY appeals as well from the court's grant of MDCI's Fed.R.Civ.P. 50 motion dismissing ONY's counterclaim for contract breach. Finally, ONY appeals from the district court's order of March 27, 2001, correcting its clerical error in calculating MDCI's pre-judgment interest.

In early 1990, MDCI and ONY executed a letter of agreement (the "Contract") by which MDCI undertook to identify a source of funding to facilitate ONY's commercialization of a drug called Infasurf. The Contract provided that, for its successful finding efforts, MDCI would receive (1) a commission of five percent of "all R & D funding ... and all other contract, licensing or other fees or payments of any kind paid to ONY by the MDCI-identified corporate partner" (hereinafter, the "pre-commercialization provision"), and (2) five percent of ONY's royalties for sales of the drug for the first five years (hereinafter, the "post-commercialization provision.").* The Contract further provided that, should ONY and the corporate partner agree to some other form of commercialization, such as a manufacturing-and-supply scheme, ONY and MDCI would "adjust this compensation in an equitable manner to provide a rate of compensation to MDCI equivalent to that contemplated herein." The Contract's choice-of-law provision stated that Massachusetts law would govern "[a]ny change in this agreement." In the fall of 1990, MDCI identified Forest Laboratories, Inc. ("Forest"), as a prospective corporate partner, and in June 1991, Forest and ONY entered into a development agreement for research and funding and a separate manufacture-and-supply agreement for the commercial sale of Infasurf. ONY received from Forest a total of approximately $30 million in pre-commercialization funding, consisting of direct R & D funding, sums paid to third parties, and loans. Believing that the Contract's pre-commercialization clause did not encompass payments to

---

\* Although the time periods envisaged under the Contract for commercialization of Infasurf are not entirely clear, the parties in their briefs and at oral argument employed this distinction between pre- and post-commercialization compensation.

third parties or loans, ONY remitted to MDCI only a five-percent commission on direct R & D funding. Because ONY and Forest had agreed to a manufacture-and-supply arrangement, and not a royalty scheme, ONY in April 1995 proposed an adjustment of the post-commercialization portion of the Contract that it claimed would be equitable to MDCI. MDCI rejected this proposal. In October 1996, MDCI sued ONY for, *inter alia*, breach of contract, *quantum meruit*, and violation of Massachusetts' deceptive business practices act.

On the parties' motions for summary judgment, the district court held, first, that the expansive language of the Contract's pre-commercialization provision unambiguously included loans to ONY, payments to third parties for ONY's benefit, and direct R & D funding to ONY. *Memorial Drive Consultants, Inc. v. ONY, Inc.*, No. 96–CV–0702E(F), 1999 WL 354491, at *4–*6 (W.D.N.Y. May 28, 1999). Second, as to the post-commercialization provision, the court found that the Contract's equitable-adjustment clause unambiguously required the parties, in light of the manufacturing-and-supply arrangement between ONY and Forest, to enter into "future negotiations" regarding appropriate compensation for MDCI, and further held that the clause failed as an indefinite "agreement to agree." *Id.* at *8. Having so determined, the court denied ONY's summary-judgment motion to dismiss MDCI's *quantum meruit* claim for post-commercialization fees. *Id.* at *9. Third, the district court dismissed MDCI's claim under Mass. Gen. Law ch. 93A § 11 (deceptive business practices) that ONY committed "commercial extortion" in its dealings with MDCI, concluding that ONY's interpretation of the pre-commercialization clause was "unfrivolous," *id.*, and that ONY's proposal for equitable post-commercialization compensation to MDCI "was, at worst, a hardball business tactic," *id.* at *10.

In its order of March 7, 2001, the district court calculated that pre-commercialization commissions owed to MDCI, less commissions that ONY had already paid, totaled $1,299,804.70. *Memorial Drive Consultants, Inc. v. ONY, Inc.*, No. 96–CV–0702E(F), 2001 WL 241781, at *2 (W.D.N.Y. Mar.7, 2001). Turning to the issue of pre-judgment interest, the court held that the Contract's Massachusetts choice-of-law provision applied "only to changes in the contract, not to the calculation of interest," and further determined that, pursuant to the rule that a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits, New York's nine-percent pre-judgment interest rule should govern (rather than Massachusetts' twelve-percent rule). *Id.* Employing New York's "center of gravity" test for determining choice of law in contract actions, the district court found that New York was the center of gravity in this case, *id.*, and applied the "single reasonable intermediate date" rule under N.Y. C.P.L.R. 5001(b) to hold that March 1996 was "the date from which to compute interest and accordingly award [MDCI] four years of interest at the rate of nine percent per year," *id.* at *3. Three weeks after issuance of this order, the district court learned that it had erroneously calculated interest on the basis of four rather than five years. On March 27, 2001, the court issued an order acknowledging its error and revising MDCI's total award. J.A. 1231–32, 1235.

After a nine-day trial on MDCI's *quantum meruit* claim in June 2000, the jury returned a verdict for defendant ONY, finding that MDCI was "not entitled to additional compensation under *quantum meruit* upon the commercialization of Infasurf because [MDCI] had already been

adequately compensated for its services by this Court's award of a five-percent commission on the pre-commercialization funding received by [ONY]." *ONY, Inc.,* 2001 WL 241781, at *5. The district court denied MDCI's motions for judgment notwithstanding the verdict and for a new trial. On MDCI's motion for judgment as a matter of law at the close of proof at trial, the court dismissed ONY's counterclaim for breach of contract under the parties' separate agreement for preparation of a Drug Master File. Tr. 969–70.

 On appeal, ONY argues that the district court erred in holding that the language of the pre-commercialization provision is unambiguous and should be construed, according to its "plain and ordinary meaning," to encompass all forms of pre-commercialization funding (including loans) paid to ONY or to third parties for ONY's benefit. *ONY, Inc.,* 1999 WL 354491, at *4–*5. We find no reason to disturb this holding. "The question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court," *Compagnie Financiere De Cic Et De l'UNION Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 232 F.3d 153, 158 (2d Cir.2000), and a court's grant of summary judgment on the basis of its contract interpretation is reviewed *de novo, id.* at 157. Under New York law,** "ambiguity does not exist simply because the parties urge different interpretations." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,* 252 F.3d 608, 616 (2d Cir.2001) (quotation marks and citation omitted). "The court should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning." *Met-*

*ropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir.1990) (quotation marks and citation omitted). Neither party, either below or on appeal, argued that extrinsic evidence was necessary to construe the pre-commercialization clause or that interpretation of the clause was a question for the jury. *Scholastic, Inc. v. Harris,* 259 F.3d 73, 83 (2d Cir. 2001) ("When the language of a contract is ambiguous and there is relevant extrinsic evidence regarding the actual intent of the parties, an issue of fact is presented for a jury to resolve, thereby precluding summary judgment."). Even if the pre-commercialization clause were ambiguous— and we do not hold that it is—"[a] court may ... grant summary judgment regarding the interpretation of ambiguous language if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Compagnie Financiere,* 232 F.3d at 158. Because neither party has urged the relevance of extrinsic evidence, and for the reasons given by the district court, we affirm the court's interpretation of the reasonable and ordinary meaning of the pre-commercialization clause to include the various types of funding that ONY received or benefitted from.

 MDCI argues that the district court erred in holding that the equitable-adjustment clause in the Contract's post-commercialization provision is an unenforceable "agreement to agree." Instead, MDCI contends, the court should have supplied any missing terms by consulting the five-percent royalty provision. We hold that the district court was correct to conclude that "the only reasonable reading of the post-commercialization provisions leads to the opposite conclusion: a supply-

---

** Although the parties dispute whether New York or Massachusetts law should govern prejudgment interest, as discussed below, their briefs implicitly agree that the rules for interpreting contract language are substantially the same under the law of both states.

and-manufacturing arrangement, as distinguished from a royalty plan, necessitates future negotiations between the parties as to MDCI's compensation." *Ony, Inc.,* 1999 WL 354491, at *8. Even if the equitable-adjustment clause were the type of binding preliminary agreement that this Court has recognized under New York law, *see Adjustrite Sys., Inc. v. Gab Bus. Servs., Inc.,* 145 F.3d 543, 547–48 (2d Cir. 1998), the parties failed to reach any agreement on its basis, and therefore the clause failed, as the district court held. *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.,* 74 N.Y.2d 475, 482, 548 N.Y.S.2d 920, 548 N.E.2d 203 (1989) ("If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract.").

Because the district court properly held that the equitable-adjustment clause failed for indefiniteness as a matter of law, we conclude that the court was equally correct to deny ONY's summary-judgment motion to dismiss MDCI's *quantum meruit,* or quasi-contract, claim. *See Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ("A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment.").

■ MDCI argues that the district court erred at the *quantum meruit* trial in limiting the testimony of MDCI's expert witness, Dr. Paul Karl Horan, with respect to the post-commercialization phase of the Infasurf project. We find no error here. Such testimony, in seeking speculatively to reconstruct post-commercialization royalties as a means of awarding MDCI "the benefit of its bargain," MDCI Br. at 42, would have improperly sought to establish something like MDCI's *expectation* interest under the (failed) equitable-adjustment clause, not the restitution (or sometimes reliance) interest that is the proper focus of *quantum meruit. See Collins Tuttle & Co., Inc. v. Leucadia, Inc.,* 153 A.D.2d 526, 527, 544 N.Y.S.2d 604 (1st Dep't 1989) ("Recovery on a claim premised upon quasi-contract or unjust enrichment is limited to the reasonable value of the services rendered by the plaintiff.... [Because] there was no exclusive sales agency agreement between the parties, measurement of plaintiff's recovery on the basis of one half of the brokerage commission actually paid ... is entirely inappropriate. Plaintiff is limited to recovery of the value of the brochure or setup which it prepared.") (internal citations omitted); *see also Carlino v. Kaplan,* 139 F.Supp.2d 563, 565–66 (S.D.N.Y.2001) ("For the most part, compensation under *quantum meruit* is based on an hourly rate for the amount of time services that are rendered.... [The parties] failed to agree to compensation [for consulting services], and the court cannot substitute for that failure.").

■ We also do not find that the district court abused its discretion in limiting this testimony. *Schonfeld v. Hilliard,* 218 F.3d 164, 180 (2d Cir.2000) ("We review the district court's decision to exclude expert testimony for an abuse of discretion, mindful that a mistake of law is automatically such an abuse."). A trial court has considerable discretion in determining whether to admit or exclude evidence. *Barrett v. Orange County Human Rights Comm'n,* 194 F.3d 341, 346 (2d Cir.1999). A motion for new trial on the basis of improper evidentiary rulings will be granted only where the improper ruling affects a substantial right of the moving party. *Malek v. Fed. Ins. Co.,* 994 F.2d 49, 55 (2d Cir.1993). In sum, MDCI's motion for a new trial was properly denied.

MDCI further argues that it should be granted a new trial because the district court erred prejudicially in its jury charge and in the wording of the special verdict sheet by instructing the jury that the court was already awarding MDCI approximately $1.5 million in pre-commercialization commissions. We disagree. The case law shows that it is proper to require the plaintiff in a *quantum meruit* case to establish that the benefit of its services exceeded any damages available under the valid portion of the contract. *See, e.g., Alter v. Bogoricin,* No. 97 CIV. 0662(MBM), 1997 WL 691332, at *11 (S.D.N.Y. Nov.6, 1997); *see also Varney v. Ditmars,* 217 N.Y. 223, 232, 111 N.E. 822 (1916) (concluding that a profit-sharing provision in an employment contract was too indefinite to enforce, but stating that the employee might recover in *quantum meruit* for the value of his services minus the amount of salary received under the contract).

We also hold that the question on the special verdict sheet was proper. The "literal, grammatical meaning" of the question, which distinguished between pre- and post-commercialization phases of the Infasurf project, did not create "an unfair obstacle to the jury's returning an answer favorable to the plaintiffs." *Cann v. Ford Motor Co.,* 658 F.2d 54, 58 (2d Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982). The question grammatically separated those phases into distinct jury considerations. The district court therefore did not abuse its discretion in submitting the question in this form. *Id.* Nor does *de novo* review of the court's jury instructions regarding MDCI's $1.5 million pre-commercialization commissions award reveal that the instructions were prejudicially "erroneous [such that] they misle[d] the jury or d[id] not adequately inform the jury of the law." *Caruolo v. John Crane, Inc.,* 226 F.3d 46, 56 (2d Cir.2000). MDCI's motion for a new trial on these grounds was properly denied.

We find no error in the district court's conclusion that the Contract's choice-of-law provision applied "only to changes in the contract, not to the calculation of interest." *Ony, Inc.,* 2001 WL 241781, at *2. It is the parties' manifest intentions that must govern the meaning of the Contract, *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.,* 41 N.Y.2d 397, 400, 393 N.Y.S.2d 350, 361 N.E.2d 999 (1977), and the court properly refrained from rewriting the parties' express choice of law.

In the absence of an express choice of law by the parties, a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In contract cases, New York courts apply a "center of gravity" or "grouping of contacts" approach to conflict-of-law issues. "Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1539 (2d Cir.), *cert. denied,* 522 U.S. 864, 118 S.Ct. 169, 139 L.Ed.2d 112 (1997); *Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1030–31 (2d Cir. 1996) (same), *cert. denied,* 519 U.S. 1116, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997). A district court's choice-of-law determination is reviewed *de novo. Caruolo,* 226 F.3d at 57. We conclude that the district court did not err in selecting New York as the "center of gravity," particularly as the ONY–MDCI Contract was executed in

New York, and ONY's partnership with Forest involved payment and receipt of development funds within New York, followed by a manufacturing-and-supply arrangement carried out within New York. The other factors advanced by the parties balance evenly between the two states, as the district court properly noted.

Accordingly, we hold that the district court was correct to apply New York's nine-percent pre-judgment interest rule, under N.Y. C.P.L.R. 5004, to MDCI's pre-commercialization damages award. Because the parties did not provide the district court with precise or complete payment dates, we find no error in the court's reliance upon N.Y. C.P.L.R. 5001(b), which provides that when damages "were incurred at various times, interest shall be computed upon ... all of the damages from a single reasonable intermediate date." The court's choice of March 1996 as a "single reasonable intermediate date" was not error. *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir.1994) ("[W]here damages are incurred at various times after the cause of action accrues, section 5001 [of N.Y. C.P.L.R.] grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest.").

■ Nor did the district court err in correcting its own inadvertent error in calculating pre-judgment interest. "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Fed.R.Civ.P. 60(a); *see also In re Marc Rich & Co. A.G.*, 739 F.2d 834, 837 (2d Cir.1984) (holding that "clerical error" refers not just to errors of transcription or copying, but also to inadver-

tent errors which arise "from oversight or omission"). Judge Elfvin did not correct the order "to reflect a new and subsequent intent of the court, but to conform the order to the contemporaneous intent of the court." *Id.* (quotation marks and citation omitted).

The district court also properly granted ONY's summary-judgment motion to dismiss MDCI's claim under Mass. Gen. Law ch. 93A § 11. None of ONY's actions approached the kind of conduct that is prohibited by that statute. *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir.1998) (referring to conduct that is "immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen"); *id.* (contract breach with "an extortionate quality that gives it the rancid flavor of unfairness"); *Ahern v. Scholz*, 85 F.3d 774, 798 (1st Cir.1996) ("the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce") (quotation marks and citation omitted).

Finally, we hold that the district court did not err in dismissing ONY's counterclaim for breach of contract under the parties' separate agreement to prepare a Drug Master File. Tr. 969–70. A reviewing court will overturn a Fed.R.Civ.P. 50 grant of judgment as a matter of law "only if, drawing all reasonable inferences in favor of the nonmoving party and making all credibility assessments in his favor, there is sufficient evidence to permit a rational juror to find in his favor." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir.1995). We find no error in the court's conclusion that ONY failed to establish sufficient evidence on that claim.

In addition, we deny MDCI's request, dated January 7, 2002, to take judicial

notice of certain Securities and Exchange Commission filings made by Forest.

We have considered the parties' other arguments and find them to be without merit. Accordingly, the judgment of the district court is hereby AFFIRMED.