232 F.3d 153 (2nd Cir. 2000)
 COMPAGNIE FINANCIERE DE CIC ET DE L'UNION EUROPEENNE; MANAGEMENT INVESTMENT FUNDING LIMITED, Plaintiffs-Appellants,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, Defendant-Interpleader-Plaintiff-Appellee,
CALEX LTD., Interpleader-Defendant-Appellee.
 Docket No. 00-7171
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: September 29, 2000
Decided: November 17, 2000
 
 Plaintiffs-appellants appeal from a grant of summary judgment by the United States District Court for the Southern District of New York (Sand, J.) in favor of interpleader-defendant-appellee in this contract dispute. We reverse and direct that judgment be entered in favor of plaintiffs-appellants.
 Reversed and remanded with instructions. [Copyrighted Material Omitted]
 STEPHEN G. RINEHART, New York, NY, for plaintiffs-appellants.
 KEVIN J. FEE, New York, NY (Daniel J. Kornstein and Ina R. Bort, on the brief), for interpleader-defendant-appellee.
 Before: McLAUGHLIN, LEVAL, and SOTOMAYOR, Circuit Judges.
 SOTOMAYOR, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Compagnie Financiere de CIC et de L'Union Europeenne ("CFC") and Management Investment Funding Limited ("MIF") (collectively "plaintiffs") appeal from a grant of summary judgment entered on February 14, 2000, in the United States District Court for the Southern District of New York (Sand, J.) in favor of interpleader-defendant-appellee Calex Ltd. ("Calex"). The district court determined that the parties' agreement securing a guarantee of a loan is governed by the termination provision of a related document, which provides that the obligations under the guarantee terminate upon "payment in full" by the debtor of its obligations under the loan agreement. The district court determined that the termination provision is unambiguous and clearly includes release of the debtor without actual repayment of the outstanding principal and interest on the loan. We disagree and find that the language of the termination provision of the agreement is ambiguous. We are able, however, to interpret the termination provision of the security agreement as a matter of law because the overwhelming weight of the extrinsic evidence, including the natural and ordinary usage of the phrase "payment in full" in the termination provision of a related document, supports plaintiffs' contention that the parties intended the agreement to expire only upon actual repayment of the principal and interest outstanding on the loan. We reverse and remand with instructions for the district court to enter judgment in favor of plaintiffs.
 
 BACKGROUND
 
 2
 This Court has previously described the details of the series of agreements between these parties, with which familiarity is assumed, in Compagnie Financiere v. Merrill Lynch, Pierce, Fenner & Smith Inc., 188 F.3d 31 (2d Cir. 1999). We set forth here only the facts relevant to this appeal.
 
 
 3
 On July 23, 1990, CFC (then known as Banque de L'Union Europeenne or "BUE") loaned Prodipe, Inc. ("Prodipe") $2.5 million. This loan was jointly and severally guaranteed by each of Prodipe's principals - J. Alejandro Weinstock, Alfredo Balli, and Patrick Mery-Sanson (the "Guarantee"). Prior to making the loan, CFC expressed concern about whether the guarantors had sufficient assets to fulfill the Guarantee, if necessary. In response, Weinstock represented to CFC that Calex, a corporation of which he was the sole shareholder, held $20 million in marketable securities in an account with defendant-interpleader-plaintiff-appellee Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"). Merrill Lynch confirmed this in a letter to CFC dated June 29, 1990. On July 2, 1990, Weinstock sent a letter to CFC explaining that the June 29, 1990 letter had been provided "in connection with that Guarantee of Patrick Mery-Sanson, Mr. Alfredo Balli and me, which Guarantee is given to you in connection with your credit of US$2,500,000 to Prodipe, Inc."
 
 
 4
 At the request of CFC, Weinstock, acting on behalf of Calex, arranged to maintain a minimum value of $2.5 million in Calex's Merrill Lynch account. On July 5, 1990, Weinstock implemented this arrangement with an instruction letter to Merrill Lynch (the "Weinstock Instruction Letter") that provided in relevant part:
 
 
 5
 On behalf of Calex, Ltd., I hereby instruct you, at the request of and for the benefit of Banque de L'Union Europeenne ("BUE"), not to sell, trade, transfer or otherwise dispose of any readily marketable securities held for the account of Calex Ltd. if such sale, trade, transfer or other disposition (individually or in the aggregate) would result in reduction in the value of the Calex Ltd. account maintained with you below the amount of $2,500,000 unless you first receive a letter or telecopy from BUE authorizing such a sale, transfer, or other disposition.
 
 
 6
 This letter is delivered at the request of BUE to induce it to enter into that certain Loan Agreement between Prodipe, Inc. ("Prodipe") and BUE providing for a loan of $2,500,000 to BUE (the "Loan Agreement"). In no event shall this letter of instruction have any further force or effect following payment in full by Prodipe of its obligations under the Loan Agreement.
 
 
 7
 (emphasis added). This instruction letter was countersigned by Merrill Lynch and forwarded to CFC.[1] Merrill Lynch confirmed the arrangement in a July 13, 1990 letter to CFC (the "Letter Agreement"):
 
 
 8
 In accordance with the instructions of Calex, we irrevocably agree that we shall not release any funds or securities available in the Investment Account . . . which would cause the total value . . . to fall below $2,500,000 until receipt by us of written notice from you releasing this restriction. . . . We understand that you are relying on our compliance with the above-described instructions from Calex and we hereby agree to comply with them.
 
 
 9
 Prodipe defaulted on its loan when it became due on December 31, 1991. By a letter dated August 19, 1992, CFC demanded repayment from the guarantors without result. At that time, CFC also attempted to confirm that Merrill Lynch would continue to abide by the Letter Agreement. By a letter dated October 1, 1992, CFC informed Merrill Lynch that it believed that Calex's investment account "constitutes collateral security" for the Guarantee and that it considered Merrill Lynch to be contractually bound by the Letter Agreement. Merrill Lynch denied any contractual obligation to CFC.
 
 
 10
 On April 30, 1993, CFC filed this action against Merrill Lynch, seeking a declaratory judgment that Merrill Lynch remained contractually obligated to maintain at least $2.5 million in Calex's account. Merrill Lynch answered and filed a counterclaim for interpleader, requesting that the district court determine whether CFC or Calex was entitled to the assets in dispute.
 
 
 11
 In 1993, CFC acquired control of 99.97% of the shares of Prodipe. On April 12, 1996, MIF, a corporation controlled by Mery-Sanson (one of the guarantors of the Prodipe Loan), purchased all of CFC's rights with respect to the Prodipe loan, the Guarantee, the arrangement with Merrill Lynch, and this litigation, and also acquired voting control of Prodipe. At the same time, CFC and MIF released Prodipe and Mery-Sanson from their obligations under the loan. MIF was allowed to intervene as a plaintiff in this case.
 
 
 12
 The district court held a bench trial on June 15, 1998. In September 1998, the district court entered judgment for Merrill Lynch and Calex on the ground that plaintiffs' release of Prodipe from its loan obligations simultaneously released the guarantors from their obligations. See Management Investment Funding Ltd. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 19 F. Supp. 2d 129, 135-38 (S.D.N.Y. 1998). This Court reversed the district court, holding that the general waiver of defenses included in the Guarantee prevented the guarantors' obligations from being discharged by the lender's release of the principal debtor. See Compagnie Financiere v. Merrill Lynch, Pierce, Fenner & Smith Inc., 188 F.3d 31, 37-38 (2d Cir. 1999). This Court remanded for consideration of any other applicable defenses. See id. at 38.
 
 
 13
 On remand, Calex moved for summary judgment, arguing that the following defenses to enforcement of the Letter Agreement entitled it to judgment as a matter of law: (1) the release terminated the Letter Agreement; (2) the Letter Agreement was not backed by consideration; and (3) plaintiffs lacked standing to enforce the Letter Agreement. The district court rejected Calex's arguments regarding its second and third defenses, a holding that Calex does not appeal. In regard to Calex's first defense, however, the district court found that the release extinguished the obligations under the Letter Agreement.
 
 
 14
 Specifically, the district court determined that the termination provision in the Weinstock Instruction Letter, which states in relevant part that "[i]n no event shall this letter . . . have any further force or effect following payment in full by Prodipe of its obligations under the Loan Agreement," was unambiguous and conveyed a "'definite and precise meaning' that Prodipe's release terminates the Letter Agreement." The district court rejected plaintiffs' argument that summary judgment was inappropriate because material issues of fact existed regarding whether the Weinstock Instruction Letter was part of the parties' agreement and whether Calex's suggested reading of the termination provision in the instruction letter was inconsistent with the Letter Agreement's fundamental purpose such that Calex's interpretation could not be indicative of the parties' intent. The district court held that the Letter Agreement incorporated the Weinstock Instruction Letter by reference and stated that it was "not convinced, in light of the limited nature of the security provided by the Letter Agreement, that it is necessarily inconsistent for the parties to have also agreed that the agreement would terminate upon Prodipe's satisfaction of its obligations under the Loan." The district court concluded:
 
 
 15
 [W]e are persuaded that the termination provision in the Weinstock letter conveys a "definite and precise meaning" that Prodipe's release terminates the Letter Agreement. Drawing all reasonable inferences in favor of the Plaintiff, we also conclude that the Weinstock letter is encompassed within the Letter Agreement's text, and is generally consistent with the agreement's fundamental purpose. Because Plaintiffs have pointed to no evidence upon which a rational factfinder might infer otherwise, Calex's motion for summary judgment is granted.
 
 
 16
 This appeal followed entry of judgment in favor of Calex.
 
 DISCUSSION
 I. Standard of Review
 
 17
 The district court concluded that the provision of the Weinstock Instruction Letter terminating its effect "following payment in full by Prodipe of its obligations under the Loan Agreement" unambiguously included plaintiffs' release of Prodipe and therefore granted summary judgment for Calex. "Our review of such a grant is de novo, employing the same tests as those applied at the district court." Mellon Bank v. United Bank Corp., 31 F.3d 113, 115 (2d Cir. 1994) (internal quotation marks omitted). The primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement. See Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993).
 
 
 18
 Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous. See Mellon Bank, 31 F.3d at 115. The question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court. See id. Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement. " Sayers, 7 F.3d at 1094 (internal quotation marks omitted). Although generally interpretation of ambiguous contract language is a question of fact to be resolved by the factfinder, see Mellon Bank, 31 F.3d at 115, "the court may resolve ambiguity in contractual language as a matter of law if the evidence presented about the parties' intended meaning [is] so one-sided that no reasonable person could decide the contrary." 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 746-47 (2d Cir. 1999) (internal quotation marks omitted); see also Shepley v. New Coleman Holdings Inc., 174 F.3d 65, 72 n.5 (2d Cir. 1999) (summary judgment in a contract dispute may be granted "when the language is ambiguous and there is relevant extrinsic evidence, but the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law") (internal quotation marks omitted). A court may also grant summary judgment regarding the interpretation of ambiguous language if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language. See Mellon Bank, 31 F.3d at 116.
 
 II. Termination of the Security Agreement
 
 19
 We must decide under what conditions the Letter Agreement between Merrill Lynch and CFC terminates. The termination provision in Letter Agreement is incomplete; it indicates how, but not when, the restrictions on Calex's account would be lifted. It provides that the agreement will remain in force "until receipt by [Merrill Lynch] of written notice from [CFC] releasing this restriction," but does not explain the conditions under which CFC would be required to send such a letter. The Weinstock Instruction Letter, however, provides for termination of the security agreement upon "payment in full by Prodipe of its obligations." The district court held that this provision controls the termination of the Letter Agreement.
 
 
 20
 Calex argues that the obligations under the Letter Agreement expire upon the terms of the Weinstock Instruction Letter and contends that the condition of "payment in full" was met by plaintiffs' release of Prodipe. We may treat the termination clause in the Weinstock Instruction Letter as controlling the agreement between Merrill Lynch and CFC if the parties intended it to govern. See Haines v. City of New York, 41 N.Y.2d 769, 771-72, 396 N.Y.S.2d 155, 157-58 (1977). Whether the Weinstock Instruction Letter controls the Letter Agreement's termination is irrelevant, however, because we find that the phrase "payment in full" as used in this context has only one reasonable interpretation - repayment of the principal and interest outstanding on the loan. Moreover, the overwhelming weight of the extrinsic evidence, including the natural and ordinary usage of the phrase "payment in full," supports this Court's determination that the only conclusion to which a reasonable finder of fact could come is that the parties intended the Letter Agreement to terminate only upon actual repayment of the loan.
 
 A. Ambiguity
 
 21
 As noted above, we agree that the termination provision in the Letter Agreement is unclear. The parties disagree whether the termination provision of the Weinstock Instruction Letter, assuming it governs the Letter Agreement, is ambiguous. The termination provision of the Weinstock Instruction Letter provides that it will have no "further force or effect following payment in full by Prodipe of its obligations under the Loan Agreement." The district court found that the termination provision in the Weinstock Instruction Letter conveyed "a 'definite and precise meaning' that Prodipe's release terminates the Letter Agreement," despite its observation that "[i]t is conceivable that one might read the phrase 'payment in full' to signify payment of the full amount of principal and interest outstanding on the Loan."
 
 
 22
 We disagree with the district court's finding that the termination provision of the Weinstock Instruction Letter is wholly unambiguous. Unambiguous language has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself and concerning which there is no reasonable basis for a difference in opinion." Seiden Assoc. Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (internal quotation marks omitted). As the district court initially observed, the phrase "payment in full" could be read to signify that the restrictions on Calex's account would terminate only upon payment of the full amount of principal and interest outstanding on the loan. In fact, although the parties could have chosen to give the phrase a different meaning, such interpretation is the most reasonable and natural meaning of the phrase "payment in full." Because we find that the term "payment in full" is open to a variety of interpretations in this context, we conclude that the termination provision of the Letter Agreement, even assuming it is governed by the Weinstock Instruction Letter, is ambiguous.
 
 
 23
 B. Extrinsic Evidence of the Parties' Interpretations
 
 
 24
 Our holding that the termination provision is ambiguous does not end the inquiry. This Court may resolve the ambiguity in the contractual language as a matter of law if there is no extrinsic evidence to support one party's interpretation of the ambiguous language or if the extrinsic evidence is so-one sided that no reasonable factfinder could decide contrary to one party's interpretation. See 3Com Corp., 171 F.3d at 746-47; Mellon Bank, 31 F.3d at 116. We find that Calex fails to point to sufficient extrinsic evidence in support of its interpretation; the only conclusion to which a reasonable finder of fact could come is that the parties intended the Letter Agreement to terminate only upon actual repayment of the principal and interest outstanding on the loan.
 
 1. Plaintiffs' Interpretation
 
 25
 Plaintiffs argue that the parties intended for the agreement regarding Calex's Merrill Lynch account to terminate only upon full payment of the loan's outstanding principal and interest.[2] In support of their interpretation, plaintiffs point to the similar use of the concept of full payment in the termination provisions of both the Guarantee and the Weinstock Instruction Letter as evidence of the coterminous nature of those agreements. The termination provision of the Guarantee provides that "[t]his Guarantee shall continue in full force and effect until all amounts due in principal, interest and any obligations payable as aforesaid of or in respect of the Loan Agreement shall be paid in full." (emphasis added) Likewise, the termination provision of the Weinstock Instruction Letter provides that it will terminate "following payment in full by Prodipe of its obligations under the Loan Agreement." (emphasis added) Plaintiffs argue that because the release did not terminate the guarantors' obligations under the Guarantee, see Compagnie Financiere, 188 F.3d at 37, then the release cannot terminate the guarantors' obligations under the agreement entered for purposes of securing the Guarantee because the parties intended those two agreements to be coterminous.
 
 
 26
 Plaintiffs also point to extrinsic evidence regarding the purpose of the arrangement with Merrill Lynch in support of their interpretation of the phrase "payment in full." Plaintiffs contend that the undisputed purpose of the arrangement was to provide assurances to CFC that in the event it would have to seek enforcement of the Guarantee against Weinstock, he would have sufficient assets against which CFC could proceed. As proof of this intent, plaintiffs point to the June 29, 1990 letter from Merrill Lynch to CFC, which assured the bank of Weinstock's financial reliability as a guarantor by stating that it was holding $20 million in readily marketable securities "on behalf of Calex Ltd." As additional evidence of the purpose of the arrangement, plaintiffs draw attention to Weinstock's July 2, 1990 letter to CFC, stating that the June 29, 1990 "Merrill Lynch Letter is provided to you in connection with that Guarantee of Patrick Mery-Sanson, Mr. Alfredo Balli and me, which Guarantee is given to you in connection with your credit of US$2,500,000 to Prodipe, Inc." Plaintiffs also note that CFC's outside counsel stated at his deposition that "the Merrill Lynch agreement was . . . there to make sure that Mr. Weinstock at least had the minimum amount necessary to satisfy the guarantee." Finally, Weinstock testified at his deposition that the purpose of the Letter Agreement was "[t]o prove that Calex is in good financial position" and that he understood that CFC was requiring the arrangement as a condition to extending the loan to Prodipe. Weinstock further stated that if no payment was made by Prodipe of its obligations under the loan, the letter of instruction would remain in full effect. Plaintiffs argue that Calex's interpretation of the ambiguous language is inconsistent with this purpose, and thus cannot be indicative of the parties' intent.
 
 
 27
 Given all of the extrinsic evidence supporting plaintiffs' interpretation, we disagree with the district court's conclusion that "[p]laintiffs have pointed to no evidence upon which a rational factfinder might" find in their favor. The district court erred in granting summary judgment in Calex's favor.
 
 2. Calex's Interpretation
 
 28
 Calex's argument in support of its interpretation of the phrase "payment in full" is, as the district court observed, "primarily textual." Calex argues, and the district court agreed, that the language of the Weinstock Instruction Letter unambiguously provides for termination upon Prodipe's satisfaction of its obligations under the loan, irrespective of whether those obligations are satisfied through a release or though repayment of the principal and interest outstanding on the loan. This Court rejects Calex's textual argument.
 
 
 29
 Calex contends that the extrinsic evidence shows that the obligations under the Letter Agreement could expire even if the obligations under the Guarantee remain. In support of this argument, Calex points to evidence that it claims shows that the termination provisions of the Guarantee and Letter Agreement were not meant necessarily to be coterminous. Calex argues that the waiver of defenses provision in the Guarantee ensures that the obligations under the Guarantee will continue in situations, such as a release of the debtor, where there might otherwise be a defense, while the obligations under the Letter Agreement - which does not contain such waiver - would not continue in the same situation. Calex further contends that because the Letter Agreement does not refer to the Guarantee, the termination provisions of the two were not intended to be coterminous.[3] However, given that we have already determined that the obligations under the Guarantee survive the debtor's release, see Compagnie Financiere, 188 F.3d at 37, we think that the above arguments are undermined by the fact that even if we assume that the Weinstock Instruction Letter supplies the appropriate termination clause for the Letter Agreement, the obligations under the Guarantee and the Letter Agreement both, by their terms, terminate upon payment in full. As the district court observed, "it seems unusual that a Guarantee and an agreement securing that Guarantee would not be co-terminous."
 
 
 30
 Calex further argues that its interpretation of the termination provision does not frustrate the purpose of the Guarantee, maintaining that plaintiffs can look to satisfy the Guarantee from Weinstock's assets outside the Calex account. In support of this argument, Calex claims that plaintiffs agreed to accept an arrangement less secure than a formal security interest or traditional escrow agreement - what Calex called at oral argument a "comfort letter" - and chose to release the debtor knowing that it only had this informal agreement. Calex, however, was unable to elucidate in its brief or at oral argument how equating "payment in full" with release would fulfill even the limited purposes of a "comfort letter." The district court accepted Calex's argument, holding that it was "not convinced, in light of the limited nature of the security provided by the Letter Agreement, that it is necessarily inconsistent for the parties to have also agreed that the agreement would terminate upon Prodipe's satisfaction of its obligations under the loan." The district court, however, did not explain how its interpretation of the agreement supported its finding that the undisputed purpose of the Letter Agreement was to provide "a modicum of security to the Plaintiffs." Moreover, regardless of the other arrangements the parties could have made - some more secure than this one - the task before us is to determine, based on the evidence available to us, the intent of the parties as to the termination of the agreement in question.
 
 
 31
 Viewing the record as a whole, the overwhelming weight of the extrinsic evidence supports plaintiffs' contention that the parties intended the Letter Agreement to terminate only upon actual repayment of the loan. Calex's allegation otherwise and its interpretation of the phrase "payment in full" is not only unsupported by the extrinsic evidence in the record and contrary to the natural and ordinary usage of the phrase, but also directly conflicts with the undisputed purpose of the agreement - to provide plaintiffs with the assurance that they could collect on the Guarantee if necessary. Given the weight of the evidence, no reasonable factfinder could find in Calex's favor.
 
 
 32
 The district court noted that because the summary judgment motion at issue in this appeal followed a bench trial, the trial record was before it. The court also observed that neither party suggested the existence of any additional evidence not already submitted at trial. The parties confirmed at oral argument that the record was complete with regard to extrinsic evidence supporting their interpretations. Because this Court can determine the conditions under which the Letter Agreement expires as a matter of law, this Court need not remand to the district court for a resolution of this case. See Chase Manhattan Bank v. American Nat'l Bank and Trust Co., 93 F.3d 1064, 1072 (2d Cir. 1996) ("An appellate court has the power to decide cases on appeal if the facts in the record adequately support the proper result or if the record as a whole presents no genuine issue as to any material fact.") (internal quotation marks and citations omitted); see also IBJ Schroder Bank & Trust Co. v. Fairfield Communities, Inc., 178 F.3d 78, 84 (2d Cir. 1999); cf. Weisgram v. Marley Co., 120 S. Ct. 1011, 1019-22 (2000) (holding that an appellate court may direct entry of judgment as a matter of law under Fed. R. Civ. P. 50, rather than remand to the district court, when it determines that the evidence properly admitted at trial is insufficient for a factfinder to decide in one party's favor. Accordingly, the district court is directed to enter judgment in favor of plaintiffs.
 
 CONCLUSION
 
 33
 For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Calex and remand with instructions for the district court to enter judgment in favor of plaintiffs.
 
 
 
 Notes:
 
 
 [1]
 CFC alleges that it did not actually receive the July 5, 1990 letter countersigned by Merrill Lynch. Upon consent of the parties, the letter was produced to the district court and made part of the record in this case.
 
 
 [2]
 The district court's contention that plaintiffs did not dispute Calex's interpretation of the termination provision in the Weinstock Instruction Letter and that they offered no alternative construction is not supported by the record. For example, in a letter brief to the district court dated December 3, 1999, plaintiffs argued that "Weinstock's July 5, 1990 letter . . . expressly requires 'payment in full' of the Prodipe loan before the instructions lapse. Mr. Weinstock chose the words 'payment in full by Prodipe'; he chose not to refer to 'release' or 'satisfaction.' The Prodipe loan has never been paid, in whole or in part." (emphasis in original)
 
 
 [3]
 There is, however, extrinsic evidence, i.e. the July 2, 1990 letter from Weinstock to CFC, linking the Guarantee to the agreement regarding Calex's Merrill Lynch account.