18-1294-cv
*GE Funding Capital Mkt. Servs. v. Nebraska Inv. Fin. Auth.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 16th day of April, two thousand nineteen.

Present:    ROBERT A. KATZMANN,
                    *Chief Judge*,
            JOSÉ A. CABRANES,
            SUSAN L. CARNEY,
                    *Circuit Judges*.

_____

GE FUNDING CAPITAL MARKET SERVICES, INC.,
TRINITY FUNDING COMPANY, LLC, GENERAL ELECTRIC
CAPITAL CORPORATION,

                    *Plaintiffs-Appellees*,

            v.                                              No. 18-1294-cv

NEBRASKA INVESTMENT FINANCE AUTHORITY,

                    *Defendant-Appellant*.

_____

For Plaintiffs-Appellees:          STEPHEN SHACKELFORD, JR. (William Christopher
                                   Carmody, Shawn J. Rabin, *on the brief*), Susman Godfrey
                                   L.L.P., New York, NY.

For Defendant-Appellant:           GREGORY P. JOSEPH (Peter R. Jerdee, Roman Asudulayev,
                                   *on the brief*), Joseph Hage Aaronson LLC, New York, NY,
                                   and Trenten P. Bausch, Cline Williams Wright Johnson &
                                   Oldfather, L.L.P., Omaha, NE.

Appeal from a judgment of the United States District Court for the Southern District of New York (Schofield, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Nebraska Investment Finance Authority ("NIFA") appeals from orders of the United States District Court for the Southern District of New York (Schofield, *J.*) denying its motions for partial judgment on the pleadings and for partial summary judgment, entered September 14, 2016, and July 6, 2017, respectively, as well as from the judgment entered November 17, 2017 and the amended judgment entered November 27, 2017, awarding prejudgment interest to Plaintiffs-Appellees GE Funding Capital Market Services, Inc. and Trinity Funding Company, LLC (collectively, "GE"), and a March 28, 2018 order denying NIFA's motion to reconsider that award. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

NIFA is an independent, quasi-governmental body established by statute. *See* Neb. Rev. Stat. §§ 58-201 to 58-272. Among other things, NIFA provides mortgage financing to low- and moderate-income Nebraska residents. NIFA funds this mortgage financing by issuing bonds. Each bond series that NIFA issues is governed by a master General Indenture, as well as a Supplemental Indenture associated with that series. Pursuant to these indentures, and so that it can make debt service payments on (and ultimately redeem) these bonds, NIFA enters into an investment agreement for each bond series that provides a guaranteed rate of return on the money raised from the bonds. Several such investment agreements entered into between GE and NIFA (the "Investment Agreements") are at issue here.

2

GE alleges that NIFA breached the terms of the Investment Agreements by continuing to collect interest on accounts after it had redeemed the bonds associated with those accounts. NIFA argues that the Investment Agreements unambiguously require GE to continue paying interest until the Agreements terminate per an express termination provision. The district court, denying NIFA's motion for partial judgment on the pleadings, concluded that the contracts are ambiguous as to when GE's obligation to pay interest terminated. Then, the district court denied NIFA's motion for partial summary judgment, concluding that the extrinsic evidence was sufficient for a reasonable juror to find in favor of GE's interpretation of the Investment Agreements. A jury found in favor of GE, and the district court awarded GE prejudgment interest on the verdict amount. The district court denied NIFA's motion for reconsideration of its decision to award prejudgment interest.

## I. Jurisdiction

This Court has jurisdiction over the issues NIFA raises on appeal. To preserve issues unsuccessfully raised in an interlocutory order, the moving party generally must file a motion for judgment as a matter of law under Rule 50(a) and then renew that motion under either Rule 50(b) or Rule 59(a). *Ortiz v. Jordan*, 562 U.S. 180, 189, 191-92 (2011); *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 201 (2d Cir. 2014). NIFA did not file these requisite motions. However, even in the absence of such motions, appellate jurisdiction exists over interlocutory orders that, like these, address "purely legal" questions. *See Ortiz*, 562 U.S. at 189-90; *Stampf*, 761 F.3d at 201 n.2.

Specifically, NIFA argues that the Investment Agreements are unambiguous. "Ambiguity is determined within the four corners of the document." *Brad H. v. City of New York*, 17 N.Y.3d 180, 186 (2011); *see also Ashwood Capital, Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 7-8 (N.Y. 1st

3

Dep't 2012) ("Whether a contractual term is ambiguous must be determined by the court as a matter of law, looking solely to the plain language used by the parties within the four corners of the contract to discern its meaning and not to extrinsic sources."); *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (whether disputed contractual terms are ambiguous is "generally discerned from the four corners of the document itself" (internal quotation mark omitted)). Because NIFA does not contend that the pertinent agreements contain any industry terms of art, this Court need not, and indeed should not, consider extrinsic evidence of custom and practice in determining whether the Investment Agreements are ambiguous. *See Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010). Therefore, the contract interpretation arguments NIFA raises on appeal are purely legal, and we have jurisdiction over them.

## II.    The Investment Agreements

We review a district court's order denying a defendant's motion for judgment on the pleadings *de novo*, *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 80 (2d Cir. 2018), "accept[ing] all factual allegations in the complaint as true and constru[ing] them in the light most favorable to the [plaintiff]," *Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2d Cir. 2018).[1] A district court's "determination that a contract is ambiguous is . . . subject to *de novo* review." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 198 (2d Cir. 2003). "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill*

---

[1] NIFA purports to appeal the district court's order denying its motion for partial summary judgment, but does not challenge the issue that order actually resolved—whether "the extrinsic evidence in the record [was] sufficient for a reasonable juror to find in favor of GE's interpretation of the termination provision." Special App. at 21.

*Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (citation and internal quotation marks omitted).

The Investment Agreements are ambiguous as to whether GE's obligation to pay interest terminates upon bond redemption.[2] On the one hand, Section 2.2 of the Investment Agreements provides that "[i]nterest on the outstanding principal balance of each Investment *shall accrue* daily as of the close of business each day from and including the date of receipt thereof by the Provider *to but excluding the earlier of the applicable Termination Date* . . . , provided that no interest will accrue on or after the applicable Termination Date." App. at 184 (emphases added). The Termination Date, in turn, is defined as a date certain no earlier than 2026, "unless earlier terminated in accordance with its terms or upon final withdrawal of all amounts invested hereunder." *Id.* at 186. None of the bases for earlier termination references bond redemption. NIFA contends that because Section 2.2 requires interest to be paid until the Termination Date, and the Investment Agreements' termination provisions are not tied to bond redemption, GE's obligation to pay interest continues even after bond redemption. This is a reasonable interpretation of the contract.

But GE's argument that its obligation to pay interest terminates upon bond redemption identifies ambiguity in the meaning of Section 2.2. That section requires GE to pay interest on certain "Investments." The Investment Agreements define "Investment" as "the Acquisition Investment, the Float Investment and the Reserve Investment, individually or together as the

---

[2] The six Investment Agreements at issue here contain slightly different language. However, no party has pointed to any material difference among the Investment Agreements. For the purposes of this order, we refer to the February 22, 1996 Investment Agreement, which governs the investment of NIFA's 1996 Series A Bonds.

context may indicate." App. at 181.[3] These specific investments are linked to specific "Funds." For example, the "Acquisition Investment" is defined as amounts deposited in the "Acquisition Fund." App. at 180, 183. These "Funds," in turn, are comprised of various "Accounts" that are connected to a specific series of bonds. For example, under the 1996 Series A Investment Agreement, the "Acquisition Fund" means the "Series 1996 A Mortgage Loan Account . . . established under the Indenture in connection with the 1996 Series A Bonds." App. at 180. The "Float Fund" means "the Revenue Fund (1996 Series A Account), the Redemption Fund (1996 Series A Account), the Debt Service Fund (1996 Series A Account) and the 1996 Series A Capitalized Interest Account, and all subaccounts therein," all of which were "established under the Indenture in connection with the 1996 Series A Bonds." App. at 181. And the "Reserve Fund" means "the Debt Service Reserve Fund (1996 Series A Account) and the Mortgage Reserve Fund (1996 Series A Account), and all subaccounts therein," both of which Funds also were "established under the Indenture in connection with the 1996 Series A Bonds." App. at 183. These provisions—which emphasize particular outstanding bond series and the relationship

---

[3] *See also* App. at 183-84 ("[T]he Provider [Trinity Funding Company] shall accept as an investment from the Bond Trustee amounts as set forth on Exhibit A hereto, which amounts initially represent all of the proceeds described in Section 2.03(a), (b), (c), (d), and (e) of the Supplemental Indenture of Trust and, together with other amounts from time to time, which are deposited (i) in the Acquisition Fund pursuant to the Indenture (such amounts herein referred to as the 'Acquisition Investment'), (ii) in the Float Fund pursuant to the Indenture (such amounts herein referred to as the 'Float Investment'[)], and (iii) in the Reserve Fund pursuant to the Indenture (such amounts herein referred to as the 'Reserve Investment')."); App. at 418 (Section 2.03 of the Supplemental Indenture, providing that "[t]he proceeds from the sales of the Series 1996 A Bonds . . . shall be deposited with the Trustee on the Date of Original Issuance and credited in the following amounts to the following Funds and Accounts created pursuant to Section 5.01 of the General Indenture and Section 5.01 of this Supplemental Indenture: (a) To the Debt Service Fund, $163,340.62, representing interest accrued on the Series 1996 A Bonds from their dated date to their date of delivery; (b) To the Series 1996 A Mortgage Loan Account, an amount equal to $50,397,00; (c) To the Series 1996 A Capitalized Interest Account, an amount equal to $551,013.66; (d) To the Debt Service Reserve Fund, an amount equal to $900,000; (e) To the Mortgage Reserve Fund, an amount equal to $1,200,000 . . . .").

between each account, fund, and investment and outstanding payments for those bonds—create ambiguity around GE's obligation to pay interest after the bonds have been redeemed.

The General and Supplemental Indentures, which are incorporated into the Investment Agreements by reference, do not resolve this ambiguity. NIFA argues that certain Indenture provisions demonstrate that funds may be transferred between accounts established for different bond series, and so the Investment Agreements survive redemption of the associated bonds. In particular, Section 5.01(c) of the General Indenture provides that "[w]ithdrawals from Funds and Accounts in connection with a particular Series of Bonds *may be made and used* (including for purposes of redemption) *for such Series of Bonds as well as any other Series of Bonds* unless specifically prohibited in a related Supplemental Indenture." App. at 282 (emphases added). And Section 4.02(b) of the Supplemental Indentures provides for redemption of bonds issued under any Supplemental Indenture with "moneys in the Redemption Fund from (i) . . . Prepayments corresponding to any Series of Bonds . . . and (ii) excess Revenues corresponding to any Series of Bonds." App. at 424. However, as GE argues, that the Indentures permit NIFA to deposit money from any bond series into the general "Revenue Fund," has little bearing on GE's obligation to pay interest on specific accounts after redemption of the corresponding bonds. And that money from one bond series can be used for payments on another bond series by no means entails that GE is obliged to pay interest on accounts linked to redeemed bonds. GE plausibly argues that, in the event money from a redeemed bond series were used for payments on another bond series, the excess balances would be transferred to other accounts, and the Investment Agreements do not entitle NIFA to earn interest from GE on money allocated to an Account not associated with that Agreement.

7

Thus, the district court correctly concluded that the Investment Agreements are ambiguous as to whether GE's obligation to pay interest on an "Investment" terminates when NIFA redeems the associated bonds.

## III. Prejudgment Interest

We review the district court's decisions to award prejudgment interest and deny a motion for reconsideration for abuse of discretion. *See SEC v. Contorinis*, 743 F.3d 296, 307 (2d Cir. 2014) (prejudgment interest); *Trikona Advisors Ltd. v. Chugh*, 846 F.3d 22, 29 (2d Cir. 2017) (motion for reconsideration).

New York CPLR § 5001 provides that interest is recoverable "upon a sum awarded because of a breach of performance of a contract" and that such interest "shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." CPLR § 5001(a), (b). Although the New York Court of Appeals has explained that "[t]he plain language of CPLR 5001(a) mandates the award of interest to verdict in breach of contract actions," *J. D'Addario & Co. v. Embassy Indus., Inc.*, 980 N.E.2d 940, 942 (N.Y. 2012) (internal quotation marks omitted), some New York courts have suggested there may be an exception for prejudgment interest awards that would result in a "windfall" to the plaintiff, *see 155 Henry Owners Corp. v. Lovlyn Realty Co.*, 231 A.D.2d 559, 560 (N.Y. 2d Dep't 1996) (prejudgment interest award "is founded on the theory that there has been a deprivation of use of money or its equivalent and that the sole function of interest is to make whole the party aggrieved. It is not to provide a windfall for either party"); *see also E.J. Brooks Co. v. Cambridge Security Seals*, 858 F.3d 744, 751 (2d Cir. 2017) (collecting cases). New York courts accordingly have looked to the economic realities of a given case to avoid conferring windfalls in the form of prejudgment interest. For example, New York

courts have been sensitive to when, if at all, the plaintiff ever actually parted with money. *See, e.g.*, *155 Henry Owners Corp.*, 231 A.D.2d at 560 (the earliest date from which prejudgment interest could accrue would be when the plaintiffs' payments exceeded the original contract price).

The New York Court of Appeals has not ruled on whether prejudgment interest can be denied where a party would otherwise be entitled to it because such an award would result in a windfall. However, we need not reach that issue here because the district court did not abuse its discretion in finding that the award of prejudgment interest was not a windfall for GE. The district court found that, although the interest payments were never actually paid out to NIFA, "[t]he funds in the investment accounts . . . were liabilities on GE's balance sheet for which GE was answerable (and had to set aside capital) regardless of the performance of any investment GE made with those funds." Special App. at 38.[4] NIFA argues that there is no evidence supporting the district court's conclusion, as GE acknowledged that it did not segregate NIFA's deposits. However, the fact that GE did not "tag" NIFA's reinvested post-redemption interest payments to track how those specific dollars were invested has no bearing on whether the increased liability on GE's balance sheet impacted GE's income and ability to invest and distribute its assets. There is reason to think that GE was, in fact, restricted in how it could use the funds improperly allocated to NIFA's account. Among other things, the Investment Agreements permitted NIFA to make certain withdrawals on as little as two business days' notice. Accordingly, it was not an abuse of discretion for the district court to conclude that GE was sufficiently deprived of the use of the sum awarded such that the award of prejudgment interest did not constitute a windfall to GE.

---

[4] The damages award deducted the estimated earnings that GE made on its actual use of NIFA's funds.

9

**IV. Conclusion**

We have considered all of NIFA's remaining contentions and have found in them no basis for reversal. For the reasons stated herein, the judgment of the district court is

**AFFIRMED**.

FOR THE COURT:<br>
CATHERINE O'HAGAN WOLFE, CLERK