Nercy **JAFARI**, Plaintiff,

v.

**WALLY FINDLAY GALLERIES and Dennis DiLorenzo, Defendants.**

**No. 89 Civ. 2390 (RWS).**

United States District Court,
S.D. New York.

July 6, 1990.

Boris J. Lewyckyj, Staten Island, N.Y., for plaintiff.

Fulbright Jaworski & Reavis McGrath, New York City, for defendant Dennis DiLorenzo; Glen Banks, Marc S. Dreier, and Louis M. Solomon, of counsel.

## OPINION

SWEET, District Judge.

Dr. Nercy Jafari ("Jafari") has moved under Rule 15, Fed.R.Civ.P., to amend his complaint to name additional defendants in his breach of contract action against Dennis DiLorenzo ("DiLorenzo"). DiLorenzo has moved for summary judgment on Jafari's contract claim and opposes his motion to amend. For the reasons set forth below, DiLorenzo's motion for summary judgment is granted, and Jafari's motion to amend is denied.

*Parties*

Plaintiff Jafari is a surgeon and a resident of Allentown, Pennsylvania. Defendant DiLorenzo is a New York resident working as a fine art consultant, both independently and as an employee of W.C.F. Galleries.[1]

*Prior Proceedings*

Jafari commenced this action for breach of contract in April 1989, demanding both compensatory and punitive damages. DiLorenzo moved to dismiss the complaint on July 11, 1989 and the motion was denied in an opinion dated September 25, 1989.

On February 9, 1990, Jafari filed a motion to amend his complaint to name two additional defendants: Herbert Batliner, the Painting's alleged owner at the time of the events in question, for breach of the alleged contract, and Renee Fotouhi, who ultimately bought the Painting from DiLorenzo and sold it through Sotheby's to Jafari, for tortious interference with the alleged contract.

On February 22, 1990, DiLorenzo filed a motion for summary judgment. Oral arguments from both parties were heard on March 9, 1990, and the motions are considered fully submitted as of that date.

*Facts*

Jafari and DiLorenzo met by chance in October 1987 outside the New York art gallery where DiLorenzo worked. Jafari expressed his interest in acquiring a painting by Salvador Dali. DiLorenzo informed him that the gallery had no Dalis, but also told him that he knew of a Dali for sale. Jafari gave DiLorenzo his name and address, and DiLorenzo sent him some transparencies of Dali's "Grand Opera" (the "Painting").

Shortly thereafter, Jafari visited New York City to view the Painting and to discuss price terms with DiLorenzo. DiLorenzo rejected Jafari's first offer, and soon told Jafari that he would only be able to offer the painting until December 31, 1987, the owner's deadline. Before Jafari would agree to buy the painting, he wanted the original certificate of authenticity (the "provenance"), which DiLorenzo was unable to provide.

On December 31, 1987, the owner gave DiLorenzo an extension to the end of January to sell the painting; DiLorenzo immedi-

---

1. W.C.F. Galleries was originally named as a defendant in the present action. However, in an opinion dated September 25, 1989, this court granted W.C.F.'s motion to dismiss, because the court found that DiLorenzo was not acting in his capacity as an employee of W.C.F.

ately called Jafari to give him another opportunity to buy it. Because DiLorenzo still could not supply the provenance for the Painting, Jafari requested that an expert from Christie's examine it.

On January 26, 1988, the Christie's expert assured Jafari that the Painting was authentic. Outside Christie's, in DiLorenzo's car, DiLorenzo and Jafari negotiated the terms of the transaction. DiLorenzo claims that he wrote the terms on his letterhead stationery because it was the only paper available. He also claims that his initials on the paper refer only to a price change (from $212,000 to $210,000), and not to authenticate the writing as a binding agreement. However, even at this time, Jafari was demanding that DiLorenzo furnish the provenance.

DiLorenzo finally obtained a letter from noted Dali expert Robert Decharnes attesting to the authenticity of the Painting. On February 13, 1988, DiLorenzo met with Jafari in New York City to discuss the letter. DiLorenzo claims Jafari said he would pay the $210,000 in a certified check [2] by February 16, 1988.[3] However, DiLorenzo did not receive the check on February 16, and therefore, DiLorenzo did not ship the Painting to Jafari.

The owner gave DiLorenzo yet another extension to sell the painting, but only if DiLorenzo would receive payment immediately. On March 11, 1988, DiLorenzo again contacted Jafari and told him that he could have another chance to buy the Painting, but he would have to pay for it immediately.

Jafari, unsatisfied with the expert opinions already received, asked DiLorenzo if one more expert could examine the Painting. DiLorenzo agreed, and on March 24, 1988 Jafari came to New York City where Dali expert Albert Field again confirmed

the Painting's authenticity. DiLorenzo therefore demanded the immediate payment of the $210,000, but Jafari had not brought the certified check. Instead, he asked DiLorenzo to come to his attorney's office in Philadelphia on the following day for payment. Jafari claims DiLorenzo said he would bring the original authenticating document. In his testimony, Jafari admits that if DiLorenzo had not brought the documents, he would have proceeded only upon the advice of his attorney. DiLorenzo claims he merely said he would "try" to get to Philadelphia, but did not promise anything.

DiLorenzo did not go to Philadelphia the next day, and in fact, sold the painting to Renee Fotouhi ("Fotouhi").[4] Fotouhi then presented and consigned the Painting to Sotheby's for sale at auction. Jafari finally acquired the painting at the auction for $330,000.

*Standards for Summary Judgment*

Summary judgment is proper only where there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In a motion for summary judgment, the moving party bears the burden of proving that no issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Furthermore, in deciding a motion for summary judgment, the court must draw all inferences in favor of the non-movant, and must view all evidence in the light most favorable to the non-movant. Accordingly, the facts presented here are viewed in the light most favorable to non-movant Jafari.

---

2. DiLorenzo admitted that he would have been willing to accept a certified check for the painting. In the opinion of September 25, 1989, this court held that DiLorenzo therefore waived the "wire-transfer" method of payment stated in the January 26 memo.

3. Jafari has submitted (Plaintiff's Exhibit E), a letter from DiLorenzo to the original owner of

the painting, stating that DiLorenzo had "sold" the painting and expected payment on February 16, 1988.

4. In his proposed amended complaint, Jafari lists both Fotouhi and Fotouhi Fine Art, Ltd., as additional defendants.

*Breach of Contract*

DiLorenzo sets forth two theories for his summary judgment motion: (1) no contract was ever formed between the parties, and (2) even if a contract was formed, Jafari breached by failing to pay for the Painting within a reasonable time. Jafari contends that a contract existed from the January 26, 1988 memo, and that DiLorenzo breached when he sold the Painting to Fotouhi.

Ultimately, DiLorenzo's first theory concerns whether or not he and Jafari intended to be bound for the sale of the Painting sometime before DiLorenzo sold it to Fotouhi. The intent to contract, an indispensable part of any contract claim, is therefore in dispute under this theory. Where intention is in dispute, summary judgment is improper. *Thompson v. Gjivoje,* 896 F.2d 716, 721 (2d Cir.1990) ("[w]here contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is improper"); *Burger King Corp. v. Horn & Hardart Company,* 893 F.2d 525, 528 (2d Cir.1990) ("[i]f there is conflicting extrinsic evidence regarding the parties' intent, the district court may only identify the issues at the summary judgment stage, not resolve them"); *Curry Road Ltd. v. K Mart Corp.,* 893 F.2d 509, 511 (2d Cir.1990) (intent of parties question of fact, and therefore, summary judgment improper).

For the purposes of this summary judgment motion only, however, we assume that Jafari and DiLorenzo did form a contract on January 26, 1988, when the Christie's expert verified the Painting and the parties agreed on the purchase price. We further assume that the memo handwritten and initialled by DiLorenzo satisfies the Statute of Frauds requirement.

■ Although this contract did not specify the payment and delivery dates, we can imply the time term into the contract. New York's UCC 2–309(1) states in pertinent part that "[t]he time for shipment or delivery or any other action under a contract if not ... agreed upon shall be a reasonable time." Furthermore, UCC 1–204(2) provides that "a reasonable time ... depends on the nature, purpose and circumstances of such action." Therefore, both Jafari and DiLorenzo were obliged by this contract to perform, tender payment and ship the Painting, within a reasonable time given the nature and purposes of the contract. *See Zev v. Merman,* 73 N.Y.2d 781, 536 N.Y.S.2d 739, 533 N.E.2d 669 (1988).

■ The purposes of this contract were twofold: Jafari would obtain the Painting he desired, and DiLorenzo expected quick payment of the $210,000 purchase price. Thus, each party was expected to substantially perform his obligation or face liability to the other. "Although the issue of substantial performance is usually one of fact, 'if the inferences are certain, the question involves only a matter of law and is to be decided by the court'." *Anderson Clayton & Co. v. Alanthus Corp.,* 91 A.D.2d 985, 457 N.Y.S.2d 578, 579 (1983) (citing 22 N.Y. Jur.2d, Contracts, § 320, pp. 198–99).

Both parties admit to knowledge of DiLorenzo's deadline to sell the Painting. Therefore, Jafari was aware at the time the agreement was formed that a time constraint underlay the entire contract, and that payment was expected as soon as possible. It is also undisputed that DiLorenzo was willing to accept a certified check or a deposit; Jafari admits that he tendered neither payment nor a deposit at any time before DiLorenzo sold the Painting to Fotouhi. Finally, it is undisputed that DiLorenzo was ready to complete the transaction at any time. Jafari admits that he would not commit himself until he was given the provenance. Jafari even admitted that if DiLorenzo had appeared at the office on March 25, 1988 without the provenance, Jafari would have proceeded only upon the advice of his attorney. In other words, Jafari conceivably was unwilling to tender payment as late as March 25, 1988.

■ The failure to tender payment is a material breach of a contract. *See Truglia v. KFC Corp.,* 692 F.Supp. 271, 276 (S.D.N.Y.1988), *aff'd without op., Truglia v. KFC Corp.,* 875 F.2d 308 (2d Cir.1989); *see also Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007, 1014 (D.C.Cir.1985) ("we find that the [buyers] failed to pay the

**68**

seller any money ... indeed it is difficult to imagine anything more material"). Jafari did not tender payment or deposit between January 26 and March 24, 1988. Given DiLorenzo's known deadline, Jafari's failure to pay within this time amounts to a material breach of the contract.

 Moreover, where a party materially breaches, he has failed to substantially perform the contract, and the other party is discharged from performing his obligation. *Ferrell v. Secretary of Defense*, 662 F.2d 1179, 1181 (5th Cir.1981); *Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 460 N.E.2d 1077, 1081, 472 N.Y.S.2d 592, 596 (1984); Restatements (Second) of Contracts § 241. Consequently, when Jafari materially breached, DiLorenzo was no longer bound to deliver the Painting to Jafari, and was free to sell it to Fotouhi on March 25, 1988.

Therefore, even assuming a contract existed, it was Jafari—not DiLorenzo—who materially breached. Therefore Jafari cannot recover for purchasing the Painting at a higher price later.[5]

*Motion to Amend*

 Because this court finds that DiLorenzo was not bound even if a contract existed, Jafari's motion to amend becomes moot. If DiLorenzo were the agent for alleged-owner Batliner, then Batliner is also released from any obligation to Jafari. Similarly, Fotouhi could not have induced DiLorenzo to breach the contract since DiLorenzo had been released of his obligation by Jafari's non-performance. Therefore, Jafari's motion to amend is denied.

For the foregoing reasons, DiLorenzo's motion for summary judgment is granted, and Jafari's motion to amend is denied.

It is so ordered.

---

**5.** It is relevant that Jafari received the provenance from Sotheby's only after he had paid for the Painting. Jafari was therefore willing to pay before receiving the provenance, so that his delay in paying DiLorenzo within a reasonable time indicates an inability or unwillingness to consummate the transaction.