**M&Z TRADING CORP., Plaintiff–counter–defendant–Appellant,**

v.

**HECNY GROUP; Hecny Transportation, Inc.; Defendants—Appellees**

---

* The Honorable Mary H. Murguia, United States District Judge for the District of Arizona, sitting by designation.

Cargolift, Ltd., a division of Hecny Group, Defendants–counter–claimant–Appellee.

No. 01–55121.
D.C. No. CV–98–02395–R.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 2002.

Decided July 12, 2002.

Before FERNANDEZ and RAWLINSON, Circuit Judges, and REED,* District Judge.

MEMORANDUM**

Appellant M&Z Trading Corp. ("M&Z") appeals a judgment in favor of defendants Cargolift Ltd., Hecny Group and Hecny Transportation Inc. (collectively "Cargolift") on M&Z's claim that Cargolift was liable for the loss of M&Z's cargo. Cargolift entered into a contract with M&Z to ship M&Z's cargo, consisting of two containers of ginseng ethyl alcohol composition. The Latvian authorities seized the cargo as contraband, while it was en route to Russia.

The district court made findings of fact and conclusions of law pursuant to Fed. R.Civ.P. 52(c) that Cargolift successfully established lack of liability for the loss of M&Z's cargo under the "Restraint of

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Princes"[1] defense provided for in the Carriage of Goods by Sea Act ("COGSA"), 46 App.U.S.C. § 1304(2)(g). As the parties are otherwise familiar with the facts, we need not repeat them here.

We review findings of fact of a trial court, sitting in admiralty, for clear error. *Evanow v. M/V Neptune,* 163 F.3d 1108, 1113 (9th Cir.1998). The district court's conclusions of law are reviewed *de novo. Mateo v. M/S KISO,* 41 F.3d 1283, 1287 (9th Cir.1994). We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## DISCUSSION

### I. Translations of Foreign Documents.

■ We reject M&Z's argument that the district court improperly excluded the translated documents in Exhibits 1 and 46.[2] We review evidentiary rulings for abuse of discretion. *Security Farms v. Int'l Brotherhood of Teamsters, et al.,* 124 F.3d 999, 1011 (9th Cir.1997). Rule 901 of the Federal Rules of Evidence requires all evidence to be authenticated prior to admission. Fed. R. Ev. 901. Without providing any affidavits or testimony regarding the competency of the translators for the translations it submitted, M&Z failed to satisfy the accuracy and reliability requirements of Rule 901. Therefore, while it may be true that the district court mistakenly based its decision to exclude the translated documents on a non-existent lo-

cal rule, the authentication still failed under Rule 901. There was no abuse of discretion.

### II   Surrender of COGSA Immunities.

■ The district court found that Cargolift was not liable because it had established the "Restraint of Princes" defense, which allows a carrier to escape liability where loss of cargo is due to seizure by a foreign government. 46 App.U.S.C. § 1304(2)(g). M&Z argues that the district court erred in its application of the "Restraint of Princes" defense due to the fact that Cargolift expressly agreed to be "responsible" for getting the ginseng composition through Latvian customs and, thus, could not seek immunity under that defense.

Because the March 26th Agreement is silent on the issue, M&Z proffered evidence of prior drafts of the parties' agreement and oral agreements to prove that Cargolift agreed to shoulder this responsibility. The district court barred this evidence under the parol evidence rule.

We do not decide whether this evidence was admissible. For the purposes of this analysis, we assume that it was.[3]

When we do, we are faced with a situation in which the terms of an alleged oral agreement directly conflict with a defense that COGSA provides. On the one hand,

1. COGSA prescribes several defenses exonerating carriers from liability. The "Restraint of Princes," is one of these statutory defenses enumerated in § 1304(2). It provides:

   (2) Neither the carrier nor the ship shall be responsible for loss or damages arising or resulting from

   — -

   (g) Arrest or restraint of princes, rulers, or people, or seizure under legal process.
   46 App.U.S.C. § 1304(2)(g).

2. We do not address M&Z's challenge to Exhibit 2 on this basis, as the district court

excluded that exhibit under the hearsay rule and not because of improper authentication.

3. M&Z challenges the district court's ruling to exclude evidence of prior drafts of the parties' agreement and testimony regarding oral agreements about responsibility for Latvian customs under the parol evidence rule. Regardless of whether we consider the parol evidence, we find the "Restraint of Princes" immunizes Cargolift. Therefore, we need not decide whether the district court's decision to exclude the evidence was proper.

M&Z submits that Cargolift orally agreed to be "responsible for Latvian customs," meaning that it agreed to be responsible for ensuring the goods were successfully transported through Latvian customs. On the other, COGSA's "Restraint of Princes" defense exempts Cargolift from liability where loss of cargo is due to the seizure by a foreign sovereign.

It is undisputed that COGSA applies to this dispute. COGSA instructs us as to how to determine which of these terms controls. COGSA section 1305 ("Section 1305") states in relevant part, "[a] carrier shall be at liberty to surrender in whole or in part all or any of his rights and immunities or to increase any of his responsibilities and liabilities under [COGSA], provided such surrender or increase shall be embodied in the bill of lading issued to the shipper." 46 App.U.S.C. § 1305. To ascertain whether Cargolift surrendered a right or, in this case, an immunity, in compliance with Section 1305, we must decide if there was a "surrender" embodied in the bill of lading.

If we literally apply the provision, we quickly conclude that the bill of lading does not satisfy Section 1305. It contains no language indicating that Cargolift either surrendered the "Restraint of Princes" defense or agreed to increase its liability regarding government seizure of goods.

Because the bill of lading merely supplemented the March 26th Agreement, we also look at the March 26th Agreement, which must be considered incorporated into the bill of lading (or vice versa). That

document, however, does not reveal anything resembling a surrender of the "Restraint of Princes" defense or any intent to increase liability regarding Latvian customs. In fact, the March 26th Agreement does not mention Latvian customs at all.[4]

Even when we consider the excluded parol evidence, we remain unconvinced that Cargolift elected to surrender the "Restraint of Princes" defense. Assuming that Cargolift orally agreed to be "responsible for Latvian customs," we conclude that such an agreement did not expressly assume liability for a risk from which the "Restraint of Princes" defense would otherwise have shielded Cargolift. Because neither the contract, the prior drafts, nor the oral agreement contain language that satisfies the requirements of Section 1305, Cargolift did not surrender the "Restraint of Princes" defense.

### III. "Restraint of Princes" Defense.

■ Since the "Restraint of Princes" remained available for Cargolift to assert, we turn to whether the district court's application of this defense was proper.

A carrier can establish immunity under the "Restraint of Princes" defense if it shows that seizure by a foreign sovereign was the proximate cause of the loss to the cargo. *See Sedco, Inc. v. S.S. Strathewe,* 800 F.2d 27, 33 (2d Cir.1986). A shipper may rebut this burden by proving that the carrier's negligence led to the loss. *See Lekas & Drivas, Inc., v. Goulandris,* 306 F.2d 426, 430 (2d Cir.1962).

---

**4.** We also reject M&Z's argument that because the March 26th Agreement stated that Cargolift was to be responsible for the goods "door to door," it somehow satisfied the surrender requirement of Section 1305. The term "door to door" is used to describe the role of freight forwarders, like Cargolift, which arrange for transportation of cargo

when the journey requires different modes of transportation, usually by land and sea. *See, e.g., Transway Corp. v. Hawaiian Exp. Serv., Inc.,* 679 F.2d 1328, 1329 n. 1 (9th Cir.1982)(explaining that freight forwarders provide "door to door" service and assume responsibility for transportation from pick up to delivery). It does not supplant COGSA.

We see no error in the district court's finding that Cargolift successfully established its right to immunity under the "Restraint of Princes" defense. Cargolift presented evidence that the Latvian officials seized the goods because they were "contraband." It was up to M&Z to rebut this evidence and show that Cargolift caused the seizure. The district court's conclusion that M&Z failed to meet its ultimate burden that Cargolift's negligence was a concurrent cause of the loss was supported by the evidence and was not clearly erroneous.

The only evidence M&Z provided to explain why the seizure occurred was a letter from the Latvian authorities in response to Cargolift's protestations of the seizure. The letter stated that the goods were seized based on the fact that the goods were declared "with counterfeit title." It also stated Cargolift labeled the goods with the code 3004 90 990. M&Z believes the use of the code 3004 90 990 instead of the code 3507 90 000 code, which it asserts is the correct code for the ginseng composition, is what caused the title to be "counterfeit" and, in turn, what led to the seizure. But, it is not clear that this is the case. The letter stated that the code should have been 2207 10 000, the code for ethyl alcohol. We do not know whether the customs authorities seized the goods for testing because the code 3004 90 990 was used, rather than the code 3507 90 000; or, whether it was because the code for ethyl alcohol, 2207 10 000, was not used.

With the little evidence presented as to what happened in Latvia, we find no fault with the district court's conclusion that the seizure was due to the official acts of the Latvian customs agents, rather than the claimed negligence of Cargolift. M&Z

failed to prove otherwise. Therefore, there was no error in the district court's finding that the "Restraint of Princes" doctrine shielded Cargolift from liability.

AFFIRMED.

FERNANDEZ, Circuit Judge, dissenting.

First, while it is, no doubt, true that documents must be authenticated and must be reliably translated, there was little opportunity to satisfy the district court's arbitrary demands in that regard. The district court sprung a wholly fictitious requirement on M&Z in the midst of trial on November 8, 2000, and then granted judgment against M&Z on a motion for directed verdict under Federal Rule of Civil Procedure 52(c) at a 9:25 a.m. hearing the next morning. I do not think that the absence of the documents makes much difference or that their presence would have affected the district court's decision, but I am convinced that the district court did err in this respect.

Second, I agree that the restraint-of-princes defense is generally available, and would have been available here if not given up by Cargolift. But, the parol evidence, which to my mind was admissible,[1] did tend to show that Cargolift agreed to assume all responsibility for getting the goods through Latvia safely. Despite M&Z's misgivings, Cargolift insisted that it could safely negotiate the Latvian system.

Then Cargolift commenced attempts to escape from its assurances, but M&Z rejected Cargolift's bait and switch tactics, or thought it had. Initially, Cargolift tried a provision that M&Z would be responsible for all customs; that was rejected. Then, Cargolift tried a provision that M&Z would be responsible for any delay by "Latvian

1. See, e.g., Trident Ctr. v. Conn. Gen. Life Ins. Co., 847 F.2d 564, 569 (9th Cir.1988); cf. United States Cellular Inv. Co. v. GTE Mobilnet, Inc., 281 F.3d 929, 938–39 (9th Cir.2002).

or Russian" customs, and that Cargolift would not be responsible for "local customs or customs documentation;" that, too, was rejected. Next Cargolift tried a provision that any delay caused by local or transit customs was M&Z's problem and, again, that Cargolift would not be responsible for "local customs or customs documentation;" that was treated by M&Z with the same disdain it had shown before. Finally, Cargolift apparently capitulated and dropped all reference to Latvia, but declared that it did not have responsibility with respect to Russian customs or customs documentation, and delay by Russian customs was M&Z's responsibility; that proposal was accepted by M&Z. I have no difficulty in reading that course of conduct to mean precisely what M&Z says it means, but Cargolift did not accomplish what it promised.

As a result, no matter how boldly Cargolift's case can be painted in theory, the true facts etiolate it, and in the real commercial world a real injustice has occurred.

Thus, I respectfully dissent.