SICOM S.P.A., Plaintiff,

v.

TRS INC., et al., Defendants.

14–CV–02085 (BCM)

United States District Court, S.D. New York.

Signed March 10, 2016

---

Enrico A. Pellegrini, Pellegrini & Mendoza LLP, New York, NY, for Plaintiff.

Shawn Anthony Turck, Popescu, Iosepovici, LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

BARBARA MOSES, United States Magistrate Judge

### INTRODUCTION

Plaintiff Sicom S.P.A. (Sicom) filed this breach of contract action against defendants TRS, Inc. (TRS) and Ted S. Sobel (Sobel) on March 25, 2014. Sicom now moves for partial summary judgment on the Second and Fourth Claims of the Amended Complaint. The parties have consented to this Court's jurisdiction for all purposes in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, plaintiff s motion is GRANTED IN PART, as to liability, and DENIED IN PART, as to damages.

### BACKGROUND

#### I. Factual Background

The factual background of this dispute is set forth in plaintiff s statement of undisputed material facts, filed pursuant to Local Civil Rule 56.1 (Pl.'s 56.1 Stmt.) (Dkt. No. 51), defendants' response (Defs.' 56.1 Stmt.) (Dkt. No. 57), and the parties' declarations and attached exhibits submitted in support of and in opposition to the motion for summary judgment. Because this is a motion for summary judgment, the Court makes all inferences and views all evidence in the light most favorable to the non-moving parties. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The following facts are undisputed, unless otherwise noted.

##### a. *The 2012 Lawsuit and Settlement*

Plaintiff Sicom is a corporation organized under the laws of Italy, with offices in Cherasco, Italy. Sicom sells goods including shipping containers. Pl.'s 56.1 Stmt. ¶¶ 1, 5. Defendant TRS is a corporation organized under the laws of New Jersey, with offices in Avenel, New Jersey. Pl.'s 56.1 Stmt. ¶ 2. Defendant Sobel is the President of TRS and resides in Woodcliff Lake, New Jersey. Pl.'s 56.1 Stmt. ¶ 3; Sobel Decl. ¶ 2 (Dkt. No. 53).

In 2012, Sicom filed an action against TRS in the United States District Court for the Southern District of New York, alleging that TRS agreed to purchase 670 ISO Dry Box shipping containers from Sicom, but after receiving the containers failed to pay for them in full. Pl.'s 56.1 Stmt. ¶ 5. The parties ultimately settled that lawsuit by means of several agreements executed on May 14, 2012, including a Settlement Agreement, a Security Agreement, and an "Agreement Extending Time for Payment Third Party Guarantee" (Guarantee), which was signed by Sicom, TRS, and Sobel. Pl.'s 56.1 Stmt. ¶¶ 6–12; Sobel Dep. 11:9–14 (Dkt. No. 48–4). On March 6, 2013, the Hon. George B. Daniels so-ordered a stipulation of dismissal with prejudice pursuant to Fed.R.Civ.P. 41(a). Pl.'s 56.1 Stmt. ¶ 4; Pellegrini Decl. Ex. 15 (Dkt. No. 48–16); Stip. of Sett. & Order of Dismissal, *Sicom S.P.A. v. TRS, Inc.*, No. 12 Civ. 5023 (S.D.N.Y. Mar. 6, 2013).

##### b. *The 2012 Settlement Agreement*

The Settlement Agreement required TRS to pay Sicom 44,850.00 by May 25, 2012, and thereafter to pay a total of $2,763,202.64 in specified monthly installments, due on the first business day of each month, from July 2012 until the full amount was paid in 2019. Sett. Agr. ¶¶ 2.1, 2.2, 2.4 (Dkt. No. 48–5); Pl.'s 56.1 Stmt. ¶ 14; Defs.' 56.1 Stmt. ¶ 14.[1]

---

1. The total amount to be paid in U.S. dollars—which the settlement agreement labels

the "Amount of Unit Payments"—consists of a base sum of $2,355,801, plus total interest

"Fail[ure] to pay in full when due any Monthly Payment" would constitute an event of default. Sett. Agr. ¶¶ 2.4, 3.1(b). Upon occurrence of an event of default, Sicom was required to provide notice to TRS of the default. Id. ¶ 3.1(f). If TRS failed to cure the default within five days after notice, the Settlement Agreement allowed Sicom a number of remedies, including acceleration of the Amount of Unit payments:

> Upon occurrence of any Event of Default, Plaintiff may declare any payment due hereunder, including all of the Amount of Unit Payments and all of the [44,850.00], to be immediately due and payable, whereupon the same shall become and be immediately due and payable, without protest, presentment, notice of dishonor, demand or further notice of any kind, all of which are expressly waived by the Defendant.

Id. ¶ 4.1(b).

The Settlement Agreement also allowed Sicom to "submit a certification of such default to the United States District Court, Southern District of New York, setting forth TRS's failure to cure the [default], together with a Judgment by Consent in favor of plaintiff . . . . for all amounts due [under the Settlement Agreement], less any payments made by [TRS]." The Judgment by Consent would become effective "upon entry by the court." Id. ¶ 4.1(a). Pursuant to this provision, the presidents of Sicom and TRS signed a "Consent to Judgment," and the parties' attorneys signed a "Judgment by Consent," with the date and the dollar amount of the judgment left blank. Pl.'s 56.1 Stmt. ¶ 9; Pellegrini Deck Exs. 7–8 (Dkt. Nos. 48–8, 48–9). These documents, which bore the docket number of the 2012 action, were intended to "allow Sicom to obtain judgment quickly in the event of a default." Sobel Dep. 20:2–5.

#### c. The 2012 Guarantee

In the Guarantee, signed at the same time as the other settlement documents, Pl.'s 56.1 Stmt. ¶ 8, Sobel personally "guarantee[d] to [Sicom] . . . the prompt, punctual, and full payment on demand, of the Indebtedness, in the event that TRS fail[ed] to pay in full and when due any amount owed . . . or other Event of Default, whether at maturity, by acceleration, or otherwise . . ." Guar. ¶ 3.1 (Dkt. No. 48–7).[2] Sobel would "not have the right to require that [Sicom] . . . first resort or proceed against [TRS] or any collateral security . . . . and nothing except cash payment in full of the Indebtedness [would] release [Sobel] from liability." Id. ¶ 3.4. The Guarantee also stated, "In the event payments due under this Agreement are not punctually and fully made upon demand, then the undersigned shall pay all reasonable costs and attorney's fees necessary for collection, and enforcement of this guaranty." Id. ¶ 3.5.

#### d. Breaches of the Settlement Agreement and Third Party Guarantee

It is undisputed that TRS failed to make its monthly payments in accordance with the schedule laid out in the Settlement Agreement. Sobel, the President of TRS, acknowledges that during the course of the payment period "TRS was unable to make installment payments as they became due." Sobel Decl. ¶ 6. By letter dated February 4, 2014, plaintiff notified Sobel and TRS that an event of default had occurred, in that TRS failed to pay the $30,000 due on January 2, 2014, or at any

---

payments of $407,401.64, pre-calculated based on an annual interest rate of 4.2%. Sett. Agr. ¶ 2.1.

**2.** The term "Indebtedness," as used in the Guarantee, meant the amount that TRS owed to plaintiff under the Settlement Agreement—that is, the total Amount of Unit Payments of $2,763,202.64, plus 44,850. Guar. ¶ 1.1.

time during the month that followed. Pellegrini Decl. Ex. 9 (Dkt. No. 48–10). Sicom then invoked the Settlement Agreement's acceleration clause and "declared that all of the Amount of Unit Payments ... were immediately due and payable." Sobel Decl. ¶ 6.

It is likewise undisputed that Sobel himself did not make any payments to Sicom, whether before or after the Event of Default. Pl.'s 56.1 Stmt. ¶ 23; Defs.' 56.1 Stmt. ¶ 23. Sobel confirmed, at deposition, that despite the Guarantee he did not make any payments to Sicom as guarantor. Sobel Dep. 31:12–14.

## II. Procedural Background

Faced with nonpayment by both TRS and Sobel, Sicom attempted to utilize the previously-executed consent judgment forms, but on March 13, 2014, Judge Daniels denied plaintiff s motion, filed in the 2012 case, seeking entry of consent judgment and related relief. Order, *Sicom S.P.A. v. TRS, Inc.*, No. 12 Civ. 5023 (S.D.N.Y. Mar. 13, 2014). Sicom then filed this separate action against TRS and Sobel.

Sicom's Amended Complaint, filed on April 17, 2014 (Dkt. No. 9), sets out four claims: (1) against TRS, for a declaratory judgment that Sicom is entitled to entry of a consent judgment; (2) against TRS, for breach of the payment provisions of the Settlement Agreement; (3) against TRS, for breach of separate provisions of the Settlement Agreement and Security Agreement prohibiting it from selling or transferring the ISO Dry Box Containers without Sicom's consent; and (4) against Sobel, for breach of the Settlement Agreement and the Guarantee.

Shortly after Sicom filed the Amended Complaint, Sobel, as president of TRS, and Roberto Marengo, the president of Sicom, signed a second "Consent to Judgment," this time on the caption of the current action. Sobel Dep. 12:7–23; Pellegrini Deck Ex. 14 (Dkt. No. 48–15). Similarly, counsel for defendants signed a new "Judgment by Consent," also on the caption of the current action, but with the dollar amount of the judgment still left blank. Pellegrini Decl. Ex. 13 (Dkt. No. 48–14). However, it does not appear that counsel for Sicom signed the second Judgment by Consent. Nor does plaintiff address these documents in its 56.1 Statement.

On July 6, 2015, after the close of discovery, Sicom moved for summary judgment. A party moving for summary judgment should identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed.R.Civ.P. 56(a). In this case, Sicom's notice of motion does not clearly identify on which claims, or parts of claims, it seeks summary judgment. However, the Court is able to glean—from a footnote in Sicom's memorandum of law— that the motion seeks partial summary judgment on two claims: breach of the payment provisions of the Settlement Agreement by TRS, and breach of the Guarantee by Sobel.[3] Sicom does not ask for judgment regarding the provisions prohibiting the sale of the ISO Dry Box Containers, and does not even mention its request for a declaratory judgment.[4] Nor has plaintiff

---

**3.** "[T]his motion for summary judgment is made solely to obtain judgment against defendants for the payment of all sums due under the Settlement Agreement and the [Guarantee]" Pl.'s Mem. of Law 2 n.2 (Dkt. No. 50).

**4.** In any event, a declaratory judgment serves no "useful purpose" when it seeks resolution

of "legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F.Supp.2d 231, 249–50 (S.D.N.Y.2006); *accord Intellectual Capital Partner v. Inst. Credit Partners LLC*, 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) ("[D]e-

moved for entry of final judgment under Fed.R.Civ.P. 54(b).[5]

In support of its motion, Sicom submitted, among other things, a declaration by its president, Marengo (First Marengo Declaration) (Dkt. No. 49), executed in Cherasco, Italy and written in English. The declaration concluded: "This declaration has been translated into the Italian language for me. I declare under penalty of perjury that the foregoing is true and correct." First Marengo Decl 4–5. In the declaration, Marengo attested that, among other things, TRS was $175,000 in default before Sicom accelerated all remaining indebtedness; that Sobel never made any payment pursuant to the Guarantee; but that after this action commenced TRS made payments of "approximately $60,000." First Marengo Decl 10, 13, 15. The declaration included two attached exhibits: (1) a spreadsheet that summarized the payments made by TRS to Sicom between May 25, 2012, and March 1, 2014, and calculated the "Total Prejudgment due to Plaintiff" as $2,425,878.14 as of March 15, 2014 (including interest at 9% and $40,933 in attorneys' fees and costs); and (2) a compilation of over thirty pages of bank statements— presumably supporting the calculations— all but five of which were in Italian, untranslated. First Marengo Decl. Exs. 1, 2.

In their opposition to Sicom's motion, defendants objected specifically to the First Marengo Declaration and its exhibits, arguing that the declaration was "defective and invalid" because (1) it was translated into Italian for Marengo to read, but no certified translation was included with the filing; (2) the declaration itself did not comply with the requirements of 28 U.S.C. § 1746, which governs the form of unsworn declarations executed outside of the United States; and (3) it included exhibits—the bank statements— that were not written in or translated into English. Defs.' Mem. of Law 1 (Dkt. No. 54).[6]

On August 10, 2015, along with its reply papers, Sicom filed a newly-executed declaration (Second Marengo Declaration) (Dkt. No. 59), which addressed two of defendants' three concerns. The new declaration—still written in English—was accompanied by an Italian translation. In addition, the new declaration concluded with the statement, "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Cherasco, Italy on August 7, 2015." Second Marengo Decl. 4–5. However, the bank statements attached to the new declaration remained untranslated. Second Marengo Decl Exs. 1–2 (Dkt. Nos. 59–1, 59–2).

---

claratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim.").

**5.** Under Rule 54(b), an order "that adjudicates fewer than all the claims ... does not end the action as to any of the claims ... and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities," except when there is an express determination that "there is no just reason for delay" in entering final judgment as to those claims.

**6.** Section 1746 provides that an unsworn declaration executed outside of the United States may be submitted in place of a sworn declaration or affidavit if, among other things, the statement is subscribed as true under penalty of perjury in "substantially the following form": " 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).' "

## DISCUSSION

### I. Legal Standard for Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128–29 (2d Cir.1996). The party moving for summary judgment bears the burden of showing the absence of any genuine dispute of material fact by citing to particular materials in the record, Fed.R.Civ.P. 56(a), (c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and the Court must view the evidence in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *L.B. Foster Co. v. Am. Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). No genuine issue of material fact exists when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Fabrikant v. French,* 691 F.3d 193, 205 (2d Cir.2012) (citation omitted).

If the moving party meets its initial burden, the burden then shifts to the non-moving party to establish a genuine dispute of fact. *Beard v. Banks,* 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001). The non-moving party may not avoid summary judgment by "relying solely on conclusory allegations or denials that are unsupported by facts." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir.2002). Instead, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial" in order to defeat a motion for summary judgment. *Garcia v. JonJon Deli Grocery Corp.,* 2015 WL 4940107, at *2 (S.D.N.Y. Aug. 11, 2015) (granting plaintiff's motion for summary judgment on several claims, where defendants did not point to any evidence creating a genuine factual issue for trial) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (internal quotation marks omitted)).

When ruling on a motion for summary judgment, the Court should only consider evidence that would otherwise be admissible. *Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 582 F.3d 244, 264 (2d Cir.2009) (quoting *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997)); *Goldstein v. Laurent,* 2011 WL 3586447, at *2 (S.D.N.Y. Aug. 2, 2011). Further, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). In this district, these principles are incorporated into Local Civil Rule 56.1, which requires that a party moving for summary judgment submit a statement with numbered paragraphs setting forth "the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civil Rule 56.1(a). The party opposing the motion must specifically controvert each numbered paragraph of the movant's statement in a corresponding paragraph of its own. Local Civil Rule 56.1(c). If the party opposing summary judgment fails to do so, that paragraph is deemed admitted. *Id.* "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed.R.Civ.P. 56(c)." Local Civil Rule 56.1(d).

Where a court does not grant all the relief requested by a motion for summary judgment, it may nonetheless enter an order stating any material fact that is not genuinely in dispute and treating that fact as established in the case. Fed.R.Civ.P. 56(g). Partial summary judgment thus functions as "a pretrial adjudication that certain issues shall be deemed established for the trial of the case," which "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." Fed.R.Civ.P. 56, advisory committee's note to 1946 amendment. Accordingly, a court may grant partial summary judgment with respect to liability on a claim, but deny summary judgment as to damages, thereby establishing liability ahead of trial without granting a final judgment from which appeal can be taken. *See, e.g., Lee v. Kucker & Bruh, LLP,* 958 F.Supp.2d 524, 532 (S.D.N.Y.2013) (granting partial summary judgment on the issue of liability as to one claim, dismissing all other claims as moot, and leaving the issue of damages on the remaining claim for trial); *Int'l Knitwear Co. v. M/V ZIM CANADA,* 1994 WL 924203, at \*6 (S.D.N.Y. Oct. 6, 1994) (granting summary judgment as to liability but not damages on all claims, and referring the case for an inquest into damages); *Stefanow v. Abruzzise,* 1993 WL 330073, at \*2 (S.D.N.Y. Aug. 25, 1993) (granting plaintiff's motion for partial summary judgment establishing liability, but leaving the damages issue for further proceedings).

## II. Liability for Breach of the Settlement Agreement and Third Party Guarantee

### a. Legal Standard for Breach of Contract Under New York Law

■ The Settlement Agreement and Guarantee both contain choice-of-law clauses designating New York law. Sett.

Agr. ¶ 2.1; Guar. ¶ 4.5. Under New York law, a settlement agreement is a contract, and any alleged breach of a settlement agreement must be analyzed according to the ordinary principles of contract law. *See, e.g., Collins v. Harrison–Bode,* 303 F.3d 429, 433 (2d Cir.2002) (noting that "it is well established" that settlement agreements are contracts, and explicitly applying New York law because the contract at issue included a New York choice-of-law clause); *accord Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481, 484 (2d Cir.1999); *Brad H. v. N.Y.C.,* 17 N.Y.3d 180, 185, 928 N.Y.S.2d 221, 951 N.E.2d 743 (2011) ("[T]he settlement agreement is a contract and its meaning must be discerned [using] principles of contractual interpretation.").

To establish breach of the Settlement Agreement, plaintiff must prove: (1) that a contract existed; (2) that Sicom adequately performed under the contract; (3) that TRS breached the contract; and (4) damages attributable to the breach. *See Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir.1996). Under the same framework, to establish that it is entitled to recover under the Guarantee, plaintiff must prove: (1) that it was owed a debt from TRS; (2) that Sobel made a guarantee of payment of the debt; and (3) that the debt has not been paid by either Sobel or TRS. *See Chemical Bank v. Haseotes,* 13 F.3d 569, 573 (2d Cir.1994); *Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.,* 2009 WL 577916, at \*5 (S.D.N.Y. Mar. 2, 2009) *aff'd,* 419 Fed. Appx. 60 (2d Cir.2011).

■ "Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 232 F.3d 153, 157 (2d Cir.2000) (citing *Mellon*

*Bank, N.A. v. United Bank Corp. of N.Y.,* 31 F.3d 113, 115 (2d Cir.1994)). Whether the language of a contract is clear or ambiguous "is a question of law to be decided by the court." *Compagnie Financiere de CIC et de L'Union Europeenne,* 232 F.3d at 158. Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (quoting *Sayers v. Rochester Tel. Corp. Suppl. Mgmt. Pension,* 7 F.3d 1091, 1094 (2d Cir.1993)).

### b. *TRS's Breach of the Settlement Agreement*

It is undisputed that the Settlement Agreement is a contract, the drafting of which both parties participated in with the assistance of counsel. Pl.'s 56.1 Stmt. ¶¶ 10–12; Defs.' 56.1 Stmt. ¶¶ 10–12. Defendants do not dispute either the existence or the terms of that contract. Defs.' 56.1 Stmt. ¶ 14.[7] Nor have defendants suggested that Sicom owes any outstanding performance under the Settlement Agreement.

The Court relies on the text of the underlying, unchallenged document, which required TRS to pay Sicom $2,763,202.64, plus 44,850, "in accordance with the payment schedule contained in the Settlement Agreement." That schedule required specific payments to Sicom on the first business day of each month, from July 2012 until the full amount was paid. Sett. Agr. ¶ 2.4; Sobel Decl. ¶ 5. TRS's failure to make an installment payment in full when due constituted an "Event of Default." Sett. Agr. ¶ 3.1(b). Once Sicom provided TRS with notice of an event of default, TRS had five days to cure the event. Sett. Agr. ¶ 3.1.

■ TRS's undisputed failure to tender required monthly payments, and its equally undisputed failure to cure the resulting default, constitute a material breach of the Settlement Agreement. *See, e.g., The Edward Andrews Grp., Inc. v. Addressing Servs. Co.,* 2005 WL 3215190, at *4–5 (S.D.N.Y. Nov. 30, 2005) (granting partial summary judgment on a breach of contract claim where the defendant company's president admitted during his deposition that he was unable to pay the monthly installments required under the contract and the company failed to cure its default within the 10 days allowed by the contract) (quoting *Jafari v. Wally Findlay Galleries,* 741 F.Supp. 64, 67 (S.D.N.Y. 1990)). For this reason, Sicom is entitled to summary judgment as to defendant TRS's liability on its claim for breach of the payment provisions of the Settlement Agreement.

### c. *Sobel's Breach of the Guarantee*

■ The issues surrounding Sobel's breach of the Guarantee are similarly undisputed. The Guarantee was a contract, the drafting of which both parties participated in with the assistance of counsel. Pl.'s 56.1 Stmt. ¶¶ 10–12; Defs.' 56.1 Stmt. 10–12. There is no suggestion that any performance by Sicom is due under the Guarantee. Nor do Defendants claim that the Guarantee itself (as distinguished from plaintiff's "characterization" of its terms, Defs.' 56.1 Stmt. ¶ 17) is ambiguous.

The Court relies on the text of the underlying Guarantee and finds that Sobel "unconditionally guarantee[d]" the "prompt, punctual, and full payment on demand, of the Indebtedness," in the event that TRS failed to pay in full and when due any amount that it owed under the

---

**7.** Defendants at times dispute plaintiff's "characterization" of the agreement's terms, Defs.' 56.1 Stmt. ¶¶ 15, 18, but do not claim

that the Settlement Agreement itself is ambiguous in any way.

Settlement Agreement. Guar. ¶ 3.1. The Guarantee, like the Settlement Agreement, allowed Sicom to accelerate the total payment, and operated as an absolute and unconditional guarantee of that payment. Guar. ¶¶ 3.2, 3.4; *see N.Y.C. Dep't of Fin. v. Twin Rivers, Inc.,* 920 F.Supp. 50, 52–53 (S.D.N.Y.1996) ("[A] guarantor of payment undertakes an unconditional guaranty that the debtor will pay on the debt"; moreover, "a creditor who seeks to enforce a guaranty of payment need not take any preliminary steps against the principal debtor before he seeks to collect the debt owed from the guarantor of payment").

It is undisputed that TRS owed Sicom a debt, that Sobel made a guarantee of payment of that debt, and that Sobel did not make any payments to Sicom when TRS became unable to make its own payments. Pl.'s 56.1 Stmt. ¶ 23; Defs.' 56.1 Stmt. ¶ 23. Sobel's undisputed failure to tender required payments is a material breach of the Guarantee, *see Jafari,* 741 F.Supp. at 67, and Sicom is entitled to summary judgment as to Sobel's liability for breach of that contract.

### d. *Defendants' Evidentiary Objections to the First Marengo Declaration and Attached Bank Statements*

■ Defendants cannot prevent the entry of summary judgment as to liability merely by arguing that two specific pieces of evidence submitted in support of plaintiff's motion are inadmissible. A party opposing summary judgment may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). However, only disputes over material facts—that is, "facts that might affect the outcome of the suit under the governing law"—can properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where there is a dispute about a

declaration or document that does "little more than provide cumulative evidence" on issues already established, summary judgment is not precluded. *See, e.g., The Offshore Drilling Co. v. Gulf Copper & Mfg. Corp.,* 604 F.3d 221, 227 (5th Cir.2010); *Xcentric Ventures, L.L.C. v. Borodkin,* 2013 WL 3034267, at *10 (D. Ariz. June 17, 2013), *aff'd,* 798 F.3d 1201 (9th Cir.2015).

In this case, neither the Marengo Declaration (in any form) nor its attached exhibits are necessary to establish breach of contract by TRS and Sobel. Plaintiff cites the deposition of Sobel himself as the primary evidentiary basis for the asserted breach by both defendants. Pl.'s 56.1 Stmt. ¶¶ 22–23. In that deposition, Sobel admits, under oath, that TRS failed to make required payments under the Settlement Agreement, and that he failed to make required payments under the Guarantee. Sobel Dep. 25:24–25, 26:1–6, 31:12–14. He repeats essentially the same admission of TRS's failure to pay in his declaration. Sobel Decl. ¶¶ 6–7.

Defendants do not dispute the admissibility of Sobel's deposition testimony, objecting only that "the referenced evidence is incomplete and does not support plaintiff's assertion of fact." Defs.' 56.1 Stmt. ¶ 22. However, defendants do not make any factual assertion to the contrary, nor do they cite any evidence contradicting the deposition testimony. A "statement controverting any statement of material fact [made by the other side] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R.Civ.P. 56(c)." Local Civil Rule 56.1(d). Moreover, as noted above, defendants' own submission includes a declaration by Sobel which confirms TRS's failure to make timely installment payments and contains no new information about Sobel's failure to pay. Sobel Decl. ¶ 6–7.

The question whether the Marengo declarations and the attached Italian bank

statements are admissible does not, therefore, preclude summary judgment on the issue of liability. There is an independent and undisputed evidentiary basis for that ruling. Both defendants' liability for breach of contract will therefore be treated as established in the case.

### III. Damages

■ To the extent plaintiff requests summary judgment as to damages, that portion of the motion is denied. As the party moving for summary judgment, plaintiff bears the burden of presenting sufficient undisputed material facts for the Court to rule in its favor. *See Adickes,* 398 U.S. at 157, 90 S.Ct. 1598. In this case, plaintiff has not provided a sufficient undisputed basis for the Court to make a determination as to the quantum of damages.

The parties agree that TRS paid at least the 44,850 lump sum required by the Settlement Agreement. Pl.'s 56.1 Stmt. ¶ 28; Defs.' 56.1 Stmt. ¶ 28. Plaintiff asserts that TRS also paid a total of $395,020 toward the Amount of Indebtedness "prior to the commencement of this action" in March 2014, Pl.'s 56.1 Stmt. ¶¶ 28, relying on the Marengo declarations and their attached exhibits for the dates and amounts of each payment. As noted above, the

Marengo Declaration also states that TRS paid another "approximately $60,000" at an unspecified time after this action commenced. First Marengo Decl. ¶ 15; Second Marengo Decl. ¶ 15.

Defendants, for their part, claim that TRS has paid "the approximate sum of" $455,020, citing the Sobel declaration. Defs.' 56.1 Stmt. ¶ 35.

Plaintiff says there is no material dispute of fact as to the payments made, presumably on the theory that Marengo's $395,020 plus "approximately $60,000" is the same as Sobel's "approximate sum of" $455,020. Pl.'s Reply Mem. of Law 6 (Dkt. No. 60). However, the Court must view all evidence in the light most favorable to defendants. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Although the parties appear to agree as to the "approximate" total of payments made, plaintiff has failed to establish either the precise amount of that total or the timing of the payment (or payments) made after this action was commenced. These facts— which are or should be within plaintiff's knowledge and evidenced by its own financial records—are required in order to calculate the damages to which plaintiff is entitled. Plaintiff is therefore not entitled to summary judgment on the issue of damages.[8] *Cf. Gallagher's NYC Steakhouse*

---

8. In addition to providing evidence of the precise amounts and timing of payments, the parties will need to address the applicable interest rate for the unpaid balance of the accelerated Amount of Unit Payments, as well as the correct allocation of payments made by TRS after Sicom filed this action, in order to resolve the damages issue. With respect to the interest rate, the Settlement Agreement prescribes an annual rate of 4.2%, which is built into the monthly payment schedule such that the accelerated total Amount of Unit Payments already includes projected interest payments covering the entire installment payment period. Sett. Agr. ¶ 2.1. However, N.Y.C.P.L.R. §§ 5001(b) and 5004 prescribe that in contract actions, prejudgment interest

at the statutory annual rate of 9% "shall be computed from the earliest ascertainable date the cause of action existed." With respect to the allocation of payments, the Settlement Agreement states that "payments received during the existence of an Event of Default shall be applied first, to costs and expenses (including attorney's fees and costs) incurred by the Plaintiff, second, to the payment of all other amounts then owing to the Plaintiff hereunder." Sett. Agr. ¶ 4.1(d). Similarly, the Guarantee contains a clause stating that Sobel shall "pay all reasonable costs and attorney's fees necessary for collection, and enforcement of this guaranty," should he fail to make payments required under the Guarantee upon demand. Guar. ¶ 3.5.

*Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.,* 2011 WL 6034481, at *6 (S.D.N.Y. Dec. 5, 2011) (granting summary judgment on damages where defendants conceded the exact amount of payments and interest due).

Once again, the Court's conclusion does not depend on whether either of the Marengo declarations is admissible. Those declarations simply do not answer the questions that prevent the entry of a damages award on the present record. *See Feng v. Hampshire Times,* 2015 WL 1061973, at *3 n.4 (S.D.N.Y. Mar. 11, 2015) (declining to rule on the admissibility of affidavits from Chinese speakers, submitted in English with no accompanying translation, because the contents of the English-language affidavits did not support granting the relief sought even if considered by the court). If the parties revisit those questions in the context of a damages inquest, however, they should bear in mind that foreign-language documents—such as the bank statements attached to the Marengo declarations—cannot be reviewed or relied on by the Court, even if otherwise properly authenticated in the declaration to which they are attached, unless they are accompanied by certified translations into English.[9]

■ If the declarant himself does not speak and read English—as in *Feng*—the party relying on his English-language declaration must also submit documents suffi-cient to establish that he understood what he was signing. 2015 WL 1061973, at *3 n. 4. A certified translation in the declarant's native language can serve this purpose, if shown to the declarant before he signed the English-language version. *See, e.g., Espinoza v. 953 Assoc., LLC,* 280 F.R.D. 113, 118 (S.D.N.Y.2011). Alternatively, the declarant can sign the document in his native language, so long as counsel files with a certified translation into English. *See, e.g., Mattis v. Zheng,* 2006 WL 3155843, at *1 n. 1 (S.D.N.Y. Oct. 27, 2006) (declining to strike the declaration of Chinese speaker whose declaration was offered in English, stating that "it would have been more appropriate for [the declarant] to sign a Chinese version of his Declaration and then for his counsel to translate the Declaration into English," but concluding that the approach taken was sufficient); *Huang v. J & A Entertainment, Inc.,* 2010 WL 2670703, at *1 (E.D.N.Y. June 29, 2010) (noting previous ruling that a declaration by witness who spoke only Chinese must be submitted in Chinese, accompanied by certified translation into English); *Cuzco v. Orion Builders, Inc.,* 477 F.Supp.2d 628, 634 (S.D.N.Y. 2007) (relying on the English-language declaration of a Spanish speaker, despite lack of an accompanying Spanish-language declaration, because plaintiff submitted a separate declaration swearing that the

---

9. *See* Order at 2, *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs., Inc.,* No. 10 Civ. 5715 (S.D.N.Y. Aug. 9, 2012) (denying cross-motions for summary judgment where the parties provided only uncertified translations of a Polish-language contract that was the subject of the dispute, without prejudice to renewal upon submission of certified translations); *U.S. v. One 1988 Chevrolet Half-Ton Pickup Truck,* 357 F.Supp.2d 1321, 1329 (S.D.Ala.2005) (declining to consider "undated, unsigned, and unverified" Spanish-language medical document offered in a summary judgment dispute, which was not accompanied by a certified translation and was therefore "undecipherable to those not literate in Spanish"); *accord M & Z Trading Corp. v. Hecny Group,* 41 Fed.Appx. 141, 143 (9th Cir.2002) (finding no abuse of discretion in District Court's exclusion of translated exhibits—rather than untranslated original documents—because "[w]ithout providing any affidavits or testimony regarding the competency of the translators for the translations it submitted, [plaintiff] failed to satisfy the accuracy and reliability requirements of [Fed. R. Evid.] 901").

declaration had been translated for the declarant).

■ In this case, defendants objected to the First Marengo Declaration because it was signed in English, contained the statement, "This declaration has been translated into Italian for me," but was not accompanied by any Italian translation. The Second Marengo Declaration is accompanied by an Italian translation, but the Italian version is unsigned, and there is no evidence that it was shown to the witness (or that it even existed) before he signed the English version. Second Marengo Deck 6–10. Moreover, the "certification" attached to that Italian translation raises several concerns. The certifier, Belinda Lai, states that she is a manager at Momingside Translation Services in New York, but does not state that she herself translated the declaration or reviewed the translation for accuracy. Nor, for that matter, does Lai state that she speaks Italian. Instead, she certifies only that, "to the best of [her] knowledge," the document attached to her statement is a "true, full, and accurate translation of the specified documents." *Id.* at 11.[10]

Assuming that the Italian translation was required because Marengo does not speak or read English (an assertion never explicitly made by any party), the Court cautions plaintiff that any future Marengo declarations, if signed in English, should be accompanied by admissible evidence, based on personal knowledge, establishing that the witness was provided with a complete and accurate Italian translation before he signed the English-language document. *See Quiroga v. Fall River Music, Inc.*, 1998 WL 851574, at *26 n.24

(S.D.N.Y. Dec. 7, 1998) ("It is permissible for the text of a sworn affidavit to be translated, with the English translation appearing on a separate piece of paper, so long as the translator identifies himself and certifies that the translation is accurate and true"). Alternatively, the witness may sign a declaration in his own language, which can be filed along with an English translation certified to be accurate by a qualified translator.[11]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is GRANTED as to liability on the Second and Fourth Claims for Relief, and those facts will be treated as established in the case. Summary judgment on the issue of damages is DENIED. Plaintiff's First Claim for Relief, seeking a declaratory judgment, is DISMISSED as redundant of the Second and Fourth Claims. Plaintiff's Third Claim for Relief, regarding Sicom's alleged disposition of the containers, remains unresolved in whole or in part. If Sicom wishes to dismiss that claim as well and move promptly for summary judgment as to damages on the Second and Fourth Claims, it should so notify the Court, in writing, no later than March 24, 2015.

**SO ORDERED.**

---

10. Lai's statement is followed by a document headed "CV–ARB," which appears to list the educational background and accomplishments of an unidentified freelance translator who lives in Brescia, Italy. *Id.* at 12. The CV does not include Lai's name or any other indication that the qualifications it lists are hers.

11. The Second Marengo Declaration (if not the First) substantially complies with the requirements of 28 U.S.C. § 1741.